[Civ. No. 3627.   Third Appellate District.—March 27, 1929.]

LILLIAN LA SHELLS, Respondent, v. GEORGE M. HENCH et al., Appellants.

Guard C. Darrah, District Attorney, Thomas H. Louttit, Assistant District Attorney, M. P. Shaughnessy and Warren A. Atherton for Appellants.

George Wadsworth for Respondent.

PLUMMER, J.—This cause is before us upon appeal from a judgment and decree granting the plaintiff a writ of mandate directing that the petitioner and respondent be restored to her position and admitted to the position formerly occupied by her as a teacher in the public schools in and for the Tracy school district, and that warrants be issued to her in payment of her salary as such teacher for the months of July, 1927, to February 1928, inclusive.

The record shows that the petitioner had been employed as a primary teacher in the kindergarten department of the public school of Tracy district in the county of San Joaquin, for the years 1922, 1923, 1924, 1925, 1926, up to and including the end of the school year in June, 1927. The employment of the petitioner as such teacher appears to have been made under contracts purporting to employ the petitioner for one year only. The last contract entered into between the petitioner and the respondents bears date of June 4, 1926, and purports to be a contract whereby the respondents employ the petitioner as a teacher in the public school of Tracy district for the period of one year, for the stipulated salary of $1,620, payable in twelve monthly installments. The time for opening of the school under this contract was set for August 30, 1926. The record shows that the petitioner fulfilled her part of the contract just referred to, and acted as a teacher in the public school of Tracy district, and taught therein until the close of the school year in June, 1927. The record further shows that some time prior to April 23, 1926, the petitioner had had some conversation with the members of the board of trustees of Tracy school district to the effect that she would not desire to teach in the Tracy school after the close of the school year for 1926; that after having had this conversation with the board of trustees of said school district the petitioner appears to have reconsidered such intention or desire, and addressed the following letter to the board of trustees, under date of April 23, 1926, to wit:

"Board of Trustees,
    "Tracy, Calif.
    "Dear Sirs:—This is to explain my statement of last year in regard to remaining in the Tracy faculty as kindergarten teacher. When I made the statement that I would not care to remain the following year my husband was to be employed by my brothers in San Jose. At that time it was too late to apply for a position in San Jose. Naturally it was my desire to be where my husband was this next year.

    "Within the last month my brothers have sold their stores and my husband has again returned to Tracy. I am very anxious to secure my life diploma which I am entitled to at the end of this coming school year.

    "Hoping this will meet with your approval and I will continue to work for the best interest of pupil and school.

                            "Sincerely,
                                "LILLIAN LA SHELLS."

In pursuance of this letter the petitioner was, by resolution of the board re-elected a teacher in said school district for the school year of 1926–1927, and a contract entered into covering said period. At about the same time the board directed its secretary to write a letter to the petitioner relative to her employment, which letter is in the words and figures following, to wit:

    "Office of Tracy School District Board Trustees.
                    "Tracy, Calif., June 1st, 1926.
"Mrs. Lillian La Shells,
    "Kindergarten Teacher
        "Central Building, Tracy, Calif.
    "Dear Madam: With further reference to your employment as kindergarten teacher for the coming year.

    "The Board members gave consideration to your statements in your letter to the board in May and expressed themselves as glad to sign your contract for one more year. It was our understanding that at the end of one more year you would then have served the required length of time to secure for you the life certificate and that you are comfortably and well provided for, the board members direct this communication be addressed to you stating that with the close of the term ending in June, 1927, the kindergarten teacher's position at the Central Building will become vacant

and this will give one year in which to obtain other employment if desired.

"The Board members are very appreciative of your past efforts and hope you will be equally successful for the coming term.

"Yours respectfully,
"THOS. O. YOUNG, Clerk Board."

The contract of employment between the petitioner and respondents in the years 1926–1927 was finally signed and executed on or about June 20, 1926, after the respondent had received the above letter. Nothing further was said relative to the term of employment of the petitioner until on or about June, 1927, when the petitioner delivered to the board certain books relative to her school work, and after delivering the same to the board, stated to the board that she was not resigning her position and did not intend to. Thereafter, and on or about June 9, 1927, the following letter, over the signature of one of the members of the board, was forwarded to the petitioner, to wit:

"(Letter-head Tracy Grammar School.)
"L. E. Richards, Superintendent.
"Tracy, California, June 9th, 1927.
"Mrs. Lillian La Shells,
"Tracy, California.

"Dear Madam: This is to advise you that your employment as a teacher in the Tracy School District terminated with the end of the 1926–27 school year, pursuant to your contract entered into on June, 1926, and, also, in accordance with the understanding between yourself and the Board of Trustees of the Tracy School District, at the time said contract was signed. Your contract is at an end and the Board has decided not to enter into a contract with you for the 1927–28 school year. Your services are therefore dispensed with at the close of the present school year, to-wit, 1926–27 school year.

"This notice is given pursuant to the order and resolution of the Board of Trustees of the Tracy School District, passed at a regular meeting of said Board, held on the 3rd day of June, 1927.

"Very truly yours,
"T. O. YOUNG,
"Trustees of the Tracy School District,
County of San Joaquin."

The record shows that some time during the month of May, 1927, preceding a statement made by the petitioner to the appellants that she did not intend to resign and had not intended to resign her position as a teacher in the Tracy school, and also preceding the letter notifying the petitioner that her services had been dispensed with, the respondents as a board of trustees of the Tracy school district had already employed another teacher to act in the place and stead of the petitioner herein. Thereafter, and on or about July 7, 1927, the petitioner, at a semi-public meeting held by the board of trustees of said district, for what purpose the record does not disclose—but it does appear that there were some two hundred persons present—the petitioner informed the respondents of her desire to continue in her former position as a teacher in the Tracy school. The record would indicate that the conversation was had with the president of the board of trustees in the presence of the other members. At this time the president of the board advised the petitioner, and also an attorney who was present, apparently representing her, that the board had already employed another teacher to act in the place and stead of the petitioner. The testimony as to this transaction is conflicting, but as the court has found as we have herein stated, and as the record shows sufficient testimony to support the finding of the court, it must be accepted as correct, even though the court might very well have found that the petitioner was only inquiring as to why she had not been rehired. The record further shows that on or about the 15th of August, 1927, the petitioner went to Berkeley, and from Berkeley to Oakland, and remained there, and did nothing further in relation to seeking her former position as a teacher in the Tracy school until on or about the twenty-third day of February, 1928, at which time she had a conversation with some members of the board in which she demanded salary warrants for the months of the school year that had already expired, and, also, according to her testimony, demanded reinstatement. Thereafter, and on the second day of March, 1928, a formal demand was served upon the board for salary warrants and for reinstatement. Upon the refusal of the board, this action was begun on the twenty-sixth day of March, 1928. The court found that at all times from the beginning of the school year of 1927, to and including the

date of the beginning of this action, the petitioner was ready and willing to resume her position as a teacher in said school, and had made the oral demands herein referred to, and also the formal written demand of March 2, 1928. It does not appear, however, that the petitioner presented herself in person at the opening of the school year, which occurred during the last week of August, 1927, or that she ever presented herself in person at the school building where she had taught, or sought in any manner to resume her former position as a teacher, other than through the demands to which we have referred. The complaint in the action sets forth all the requirements showing the employment of the petitioner as a teacher in the public school of the Tracy school district, her legal qualifications; the compensation which had formerly been paid her; the fact that there were at least twenty-three teachers employed in said Tracy school district, under a principal devoting at least two hours per day to supervision of the schools under his control.

It is sufficient to say that the allegations of the petition are ample to bring the petitioner within the provisions of the Teachers' Permanent Tenure Law, as set forth in section 1609 of the Political Code. The answer of the respondents, admitting the allegations of the plaintiff as to employment, save and except as to the school year for 1927–1928, sets up as a defense that the petitioner had resigned as such teacher, had taken her permanent residence elsewhere, and then alleges, as a further and separate defense, as follows: "That the plaintiff has been guilty of laches and unreasonable delay, and her right of action, if any she has herein, is barred by laches, and she is now estopped from seeking relief because demand or request for the same has not been promptly made, and for the further reason that petitioner has not made any offer to perform her alleged contract prior to the 23rd day of February, 1928, and for the further reason that the petitioner has made no offer to protect respondents herein from the necessity, if necessity there be, of paying two persons for the same services." This allegation does not show that the respondents relied upon any of the acts of the petitioner, or that any acts of the petitioner have led to the injury of the respondents or to the injury of the school district of which the respondents are the trustees. Nor is there any allegation in the answer,

nor is there anything appearing in the record to show that the respondents would not have acted in the manner in which they acted had it not been for the acts of the petitioner. In other words, there is no showing that the respondents have been misled, to their injury, or the injury of the district, by reason of any failure of the petitioner to bring her action more promptly. The record shows, as we have herein stated, that the respondents, as trustees of the Tracy school district, had already employed a teacher to act in the place and stead of the petitioner, prior to writing and forwarding to the petitioner of the letter dated June 9, 1927, informing the petitioner that her services had been dispensed with.

The record also shows that from the beginning of the employment of the petitioner as a teacher in the public school of the Tracy school district, the respondents have consistently acted as though the Teachers' Permanent Tenure Law, as set forth in section 1609 of the Political Code, were not in existence. Every year from 1922 to 1927, the contracts of employment indicate that the board of trustees claimed the right and purported to exercise the right of employing teachers for one year at a time, and that at the expiration of the year, the term of employment would cease. So far as the record shows, the board of trustees made no classification of teachers who had successfully taught for two years in the Tracy school, and who possessed otherwise the legal qualification to be classified as permanent teachers. This lack of the board to act, however, does not prevent the operation of the law in making such classification, and as the petitioner, under the law, was entitled to such classification, she must be so considered as classified, even though the board of trustees has failed to act, and at all times proceeded to enter into contracts purporting to limit the term of employment from year to year. To hold otherwise would be to decide that the provisions of the Teachers' Tenure Act may be evaded by the expedient of using contracts reading for a yearly employment, and thus giving the board of trustees the authority to dispense with the services of a teacher, even though section 1609 of the Political Code prohibits dismissal of a teacher, other than for cause, and requires that notice shall be given to the teacher, and a hearing had.

■ In *Grigsby* v. *King,* 202 Cal. 299 [260 Pac. 789], where a teacher had been employed for at least two years, under yearly contracts, the court said: "It was stipulated that there were written contracts for the first and second years' service, and that the third year's service was rendered pursuant to re-election by the Board, at the end of the second year. The law requires nothing more. The showing of two years' successful work brings the plaintiff within the statute, and it was the duty of the Board at that time to classify her as a permanent teacher, and any other action on its part was beyond its power and of no avail." Under this interpretation and application of the Teachers' Tenure Act the petitioner became, under the law, a permanent teacher at least two years prior to the time when the appellants sought to dispense with her services without proceeding according to the requirements of section 1609 of the Political Code. The mere entering into contracts after the time when the law had classified the petitioner as a permanent teacher cannot be held to prevent the operation of the provisions of the section, as such action, on the part of the board of trustees, was beyond their power.

The trial court found that the petitioner had not abandoned or resigned her position as a teacher in the Tracy schools, and that her right of action was not barred by laches or unreasonable length of time, and that no element of estoppel prevented her recovery. We do not need to discuss the question of estoppel because there is no showing whatever in the record that the appellants would have acted differently had any action of the petitioner been different. The entire record establishes clearly that the appellants acted upon the theory that they had a right, by reason of the yearly contracts, to employ and discharge teachers, irrespective of the Permanent Tenure Law, and to some extent the record shows that the petitioner was not aware of her rights under the provisions of section 1609 of the Political Code.

The appellants rely chiefly upon the alleged laches of the petitioner in beginning this action, and a number of cases are cited to sustain their contention. The principal case relied upon is that of *Donovan* v. *Board of Police Commrs.,* 32 Cal. App. 392 [163 Pac. 69]. In this case it appears that a police officer had been dismissed by the board of police

commissioners of the city of San Francisco, and sought by way of *certiorari* to have the order dismissing him annulled. Among other things, in disposing of the case, the court said: "A petition for a writ of *certiorari* being addressed to the sound discretion of the court, is very similar to an application for an injunction, and laches, which is the neglect or omission to assert a right, may be set up as a defense to the petition." It further appears in that case that the petitioner had waited over fourteen months before beginning his action, and that a number of changes had taken place during the interval. The court further defined "laches" to be "such neglect or omission to assert a right as, taken in conjunction with lapse of time, more or less great, and other circumstances causing prejudice to the opposite party, operates as a bar in equity." And, further: "In the absence of a showing sufficient to excuse, this delay constitutes laches. While it is true that mere lapse of time, short of that prescribed by a statute of limitations, in any given similar case, will not in itself suffice to constitute laches so as to bar a remedy, nevertheless, if, in addition, it appears from all the circumstances of the case that prejudice must, or from the very nature of the case may be reasonably expected to result, the remedy will be denied." A number of New York cases are cited as well as several California cases, where the principle of laches has been applied and relief denied on that account.

In the case of *Harby* v. *Board of Education*, 2 Cal. App. 418 [83 Pac. 1081], the facts show that more than three and one-half years had expired before the action was prosecuted and the court held that the petitioner had been guilty of laches, and relief was denied.

In the case of *Curtin* v. *Board of Police Commrs.*, 74 Cal. App. 77 [239 Pac. 355], the facts show that nearly three and one-half years had expired, and that in the meantime the persons who had filed charges against petitioner had died. The trial court held the petitioner's application barred by laches, and this judgment was affirmed.

The New York cases cited in the California cases to which we have referred are supreme court cases and reported in the New York Supplement. We do not need to refer to the cases specifically because all of them are based upon section 2125 of the Code of Civil Procedure, which limits applications for

writs of *certiorari* to four months. The case of *People* v. *Collis*, 6 App. Div. 467 [39 N. Y. Supp. 698], being one of the first cases upon the subject, the section of the Code of Civil Procedure limiting the right to institute *certiorari* proceedings to four months is referred to, and the same statute of limitations is applied to *mandamus* proceedings. This principle has been applied in all of the subsequent New York cases, the court holding that while there is no statute of limitations provided in *mandamus* proceedings, yet by the same reasoning the statute of limitations barring *certiorari* proceedings at the expiration of four months is applicable to *mandamus* proceedings. We have no such statute in this state, and, therefore, the New York cases applying the rule of laches in *mandamus* proceedings based upon a statute of limitations dealing with *certiorari* proceedings cannot be considered as authority in this state, further than that the general principle of laches applies to *mandamus* proceedings even though the statute of limitations of actions has not run.

In this state, as set forth in 10 Cal. Jur. 526, "there is no artificial or hard-and-fast rule either as to the lapse of time or the circumstances which will justify the application of the doctrine of laches. The question must be determined by a consideration of all the facts and circumstances of the particular case. Laches is a question of fact on the evidence, and each case becomes largely a law unto itself. In other words, the matter is one which reposes in the sound discretion of the chancellor. Lapse of time is an important element in determining laches. But it is so only as it may show an abandonment or waiver of rights, or an acquiescence in the situation created by the defendant's fault, or as it has resulted in prejudice or a presumption of prejudice to the defendant or others. Laches in legal significance is not mere delay, but delay that works a disadvantage to another, mere delay alone being unimportant. The reasoning upon which the rule of laches is based is not alone a lapse of time during which the neglect to enforce a right has existed, but the changes of conditions which have intervened. It may be added, though, that a great lapse of time, especially if the claimant has knowledge of the existence of his right, is often held sufficient to create the presumption or implication of another fact of an

equitable nature, and thus to justify a decision against the claimant.'' The rule relating to laches in *mandamus* proceedings is set forth in 16 Cal. Jur. 773, practically as just herein stated. In 21 Corpus Juris, 217, the rule which we are considering, and its application, are thus stated: ''There is no absolute rule as to what constitutes laches or staleness of demand, and no one decision constitutes a precedent, in the strict sense, for another. Each case is to be determined according to its own peculiar circumstances. In other words, the question of laches is addressed to the sound discretion of the chancellor, and his decision will not be disturbed unless it is so clearly wrong as to amount to an abuse of discretion. In determining whether there has been laches, there are various things to be considered, notably, the duration of the delay in asserting the claim, and the sufficiency of the excuse offered in extenuation of the delay, whether plaintiff acquiesced in the assertion or operation of the corresponding adverse claim, the character of the evidence by which plaintiff's right is sought to be established, whether during the delay the evidence of the matters in dispute has been lost or become obscured, or the conditions have so changed as to render the enforcement of the right inequitable,'' etc.

■ Under these rules, unless we can say there has been an abuse of discretion vested in the trial court, the judgment must be affirmed. It is not sufficient to say that if the trial court had sustained the plea of laches we would be under the necessity of affirming such decision. Whether there has been an abuse of discretion must be determined from the circumstances surrounding the instant case, and not by reference to any of the cases cited, for the reason that each case practically stands alone. As stated, mere lapse of time is not sufficient. There must have been some changed conditions from which injury would result to the defendants or from which injury necessarily must be presumed. ■ These elements are wanting in the case at bar. The appellants as the Trustees of Tracy school district, in the month of May, 1927, employed another person to teach in the place and stead of the petitioner, before writing and sending to the petitioner the letter dated June 9, 1927, notifying the petitioner that her services had been dispensed with. In other words, the board of trustees had taken the act voluntarily, which might be urged as the preju-

dice suffered by them, before notifying the petitioner of her discharge. Had the employment of another teacher taken place after the dismissal of the petitioner and during the period of time that lapsed before she made demand for her position on July 7, 1927, or before she made her formal demand in writing under date of March 2, 1928, then and in that case it would present a matter of defense for the trial court to consider, but when it appears by the record that no act injurious to the defendants resulted from anything done or performed, or from the failure of the petitioner to make immediate demand or institute suit before beginning this action, we cannot very well see how this court can hold that a mere delay of about nine months constituted such laches as imposed upon the trial court the necessity of denying relief to the petitioner upon such grounds, or imposes upon us the necessity of holding that the trial court abused its discretion in not denying relief to the petitioner upon the ground of laches.

The judgment of the trial court is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.