[Civ. No. 10371.   Second Appellate District, Division One.—May 1, 1936.]

WILLIAM LOTTS et al., Respondents, v. BOARD OF PARK COMMISSIONERS OF THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Ray L. Chesebro, City Attorney, and Frederick von Schrader and Leon T. David, Assistants City Attorney, for Appellants.

Delvy T. Walton for Respondents.

WHITE, J., *pro tem.*—This is an appeal from a judgment of the superior court declaring that petitioners are entitled to a peremptory writ of mandate ordering their reinstatement to full-time positions in the department of parks of the city of Los Angeles, upon full pay; and further directing the said city to draw warrants in favor of petitioners for the difference in wages between those paid and those appurtenant to full-time employment.

The record discloses that on June 26, 1931, the council of the city of Los Angeles passed Ordinance No. 69872, providing for the creation of half-time positions in what is known as the classified service, and further providing that the general manager, officer or board having the power of appointment in any department of the city should have the authority to order the employment of persons on a half-time basis, and to reduce the compensation of such persons according to the provisions of the ordinance. The ordinance further declared by its terms that such half-time positions were to be filled by persons who had been in the service of the city of Los Angeles for at least five years previous, where they were still able to render service satisfactory in quality, but where, because of advanced years or injury, such work was less than standard quantity. By its terms the ordinance further provided that before any reduction in compensation could be made, the Board of Commissioners

in any department should approve the same, and the general manager or personnel employee of such department should file with said board a report, showing that a careful investigation had been made relative to the work of such persons, and recommending such reduction. The council, in enacting the ordinance, did so as an emergency measure, stating therein that a great number of persons employed by the city were still able to render service satisfactory in quality, but, because of advanced age or injury, of less than standard quantity, and that the retention of such employees on a full-time basis would be detrimental to the public welfare. It is conceded that nowhere in the charter of the city of Los Angeles is any provision made for retirement on pension of employees such as petitioners herein, and therefore this ordinance was not adopted pursuant to any pension or retirement system, but must depend for its validity upon the general powers granted to the city and to its council, as well as the limitations provided in the charter.

It appears from the record that the department of parks of the city of Los Angeles is one of the semi-autonomous divisions of the city mentioned in such ordinance; that is to say, the funds for its operation are automatically allotted to it by virtue of the requirement that not less than a seven-cent levy be allocated for its support every year. The balance of the funds for its operation comes from budgetary appropriations in aid of its work made by the city council, but, except as expressly granted by charter, the council has no control over its operations. The respondent Board of Park Commissioners has full control over the appropriation of funds and over all park operations, and its powers are exercised by order or resolution, while its administrative operations are in charge of a general manager. Provisions of the charter authorize the department of parks to prepare its own budget and expend the funds of the department in accordance with the budgetary appropriation. The respondent Board of Park Commissioners is also authorized by the said charter to ''create the necessary positions in said department, authorize the necessary deputies, assistants and employees, and fix their salaries and duties. . . . ''

In the spring of 1932 it appears that the park department employed several hundred employees. Proceeding under the terms of the above-mentioned ordinance, the Board of Park

Commissioners, in providing a budget for the fiscal year 1932–1933, created half-time positions, and notified petitioners herein that they would be placed upon a half-time basis. The respondent Board of Park Commissioners adopted various resolutions, predicated on the aforementioned ordinance, and reciting that the employees named therein were able to render service satisfactory in quality, but, because of advanced years or injury, of less than standard quantity, and directing that such employees be placed on half-time work at a reduced salary. Thereafter the petitioners (respondents herein) demanded that they be reinstated to full-time positions at full-time salaries, and upon denial of their applications for reinstatement petitioners commenced this proceeding.

By their petition for a writ of mandate petitioners contend that any reduction of hours or compensation constitutes a discharge from the position held by them prior to the initial action taken in 1932, and contend that placing petitioners on half-time work was in defiance of the terms of sections 112 (a) and 125 of the charter of the city of Los Angeles. The trial court found that the action of respondent Board of Park Commissioners and the department of parks, in placing petitioners upon half-time work, constituted a removal, suspension, and lay-off, and deprived petitioners of their regular full-time employment, while some three hundred or more employees of the same civil service grade or class were continued on a regular full-time basis; that this action constituted a discrimination against petitioners under the classified civil service positions held by each of them, and that such action, not having been taken in accordance with civil service regulations, was illegal and void, and entitled petitioners to a writ of mandate directing their reinstatement to full-time positions and payment to them of the difference in salaries actually received by them for their half-time work and the amount that would have been received by them as salaries had they been continued on a full-time basis. Judgment was entered accordingly.

Petitioners were regularly appointed civil service employees of the city of Los Angeles, assigned to permanent duty in the department of parks of said city, where they had been employed for periods ranging from something over

four to twenty-two years, and classified in such service as foreman, gardeners, and assistant gardeners.

Section 112 (a) of the Los Angeles city charter provides that any board or officer having the power of appointment of officers, members and employees in any department of the government of the city shall have the power to remove, discharge or suspend any officer, member or employee of such department, subject, however, to the restraint that no person in the classified civil service of the city, other than an unskilled laborer employed by the day, shall be removed, discharged or suspended except for cause, which cause shall be stated in writing by the board or officer having the power to make such removal, discharge or suspension, and filed with the board of civil service commissioners with certification that a copy of such statement has been served upon the person or employee so removed, discharged or suspended, personally, or by leaving a copy thereof at his last known place of residence, if such employee cannot be found. This section of the city charter then goes on to say that upon such filing, the removal, discharge or suspension of the employee shall take effect. The same section then goes on to provide that within fifteen days after such statement shall have been filed the board of civil service commissioners may, upon its own motion or upon written application of the employee removed, discharged or suspended, proceed to investigate the grounds for such removal, discharge or suspension. This section further empowers the board of civil service commissioners, if they find that the grounds stated for such removal, discharge or suspension were insufficient or were not sustained, and that the discharged employee is a fit and suitable person to fill the position from which he was removed, to cause his reinstatement or restoration to duty. Said section further provides that if the board of civil service commissioners, after hearing, shall order the reinstatement of a removed, discharged or suspended employee, such employee shall be entitled to receive compensation from the city, the same as if he had not been removed, discharged or suspended by the appointing board or officer.

Section 125 of the Los Angeles city charter provides that whenever an employee shall be suspended because of lack of work, lack of funds, or abolishment of his position, or otherwise, excepting suspension for personal delinquency,

the reinstatement of employees so suspended for reasons other than personal delinquency shall be based upon seniority. This section further provides that in case of suspension for other than personal delinquency, the person having the shortest length of service in such civil service classification shall be suspended first, and that any person so suspended shall be entitled to displace the person holding the position in a class-group in which a regular position was formerly held by the person so suspended who has a shorter length of service in such class-group and in classes of higher rank.

Pursuant to the aforesaid charter provisions, the board of civil service commissioners adopted rules and regulations defining the procedure available to employees to obtain an investigation by the board of civil service commissioners of the grounds of such removal, discharge or suspension.

Appellants assail the judgment mainly on the ground that the action of the Board of Park Commissioners in placing the petitioners on a half-day basis did not constitute a removal, discharge or suspension under section 112 (a), *supra,* of the city charter, and that the city council of the city of Los Angeles acted within its rights in adopting the aforementioned ordinance and that the respondent Board of Park Commissioners in proceeding thereunder to change the status of petitioners from full-time employees to half-time workers acted legally and within its rights; arguing in support thereof that the appellant Board of Park Commissioners, by virtue of its own power of employment, its own power to manage its department, its autonomous control of its own funds, and in the absence of any charter provisions providing for retirement of its superannuated employees, has ample authority to provide half-time positions within each grade of classified service, to which those who are physically unable to perform a full day's service may be assigned, allowing them, as appellants urge, to earn some salary in lieu of the pension which the citizens of Los Angeles have not seen fit to provide. We are of the opinion that however laudable may be the motives, or however humane and kindly may be the objectives, of the city council and the Board of Park Commissioners, nevertheless, the charter limitations and legal restraints upon such official action may not be brushed aside upon the plea that good, perchance, may follow. Such phi-

losophy finds no countenance in the American system of government.

We must now determine whether the transfer of petitioners from full-time employment to half-time work constituted a removal, suspension or dismissal from the classified positions held by them, and whether they were entitled to retain their full-time positions unless removed for cause in accordance with civil service regulations. Webster's New International Dictionary (1931) defines removal as ''the act of a person or body having lawful authority thereto, in depriving one of an office to which he was appointed or elected''. Words and Phrases, third series, volume 6, page 688, is authority for the statement that ''removal is commonly applied to a change from one position to another''. In Webster's Dictionary, *supra*, suspension is defined as ''a temporary delay, interruption, or cessation, as of labor; temporary forced withdrawal of the exercise of official powers, prerogatives'', etc. Therefore, when, as in the instant case, the Board of Park Commissioners transferred petitioners from full-time positions to half-time work and proceeded to fill the vacated full-time positions with other employees taken from the civil service list, it seems to us that petitioners were removed from their positions, and that such removal could only be accomplished for cause and in conformity with the charter provisions governing the removal of classified civil service employees. To hold otherwise would be to say that any classified civil service employee in the park department, after years of service, in good health, perfectly capable of discharging the duties of his position, whose behavior has been excellent, and against whom no charges are made, may nevertheless by resolution of the Board of Park Commissioners be placed in a half-time position and his salary reduced one-half, and then assigned, as petitioners herein were, to precisely the same duties he discharged before he was placed on half-time work, and his full-time position filled by the park board with someone else. We think this cannot be justly said to be the exercise either of the power to regulate and define the duties of employees in the park department or of the simple power to fix their salaries. That such a power would be, in the present case, in good hands, and that no arbitrary or improper action on the part of the board would result from its exercise, may be fully conceded. It is a question simply whether under the city charter and laws the power has in fact been granted, and

upon a careful examination we are compelled to say we think it has not. If the power generally to fix salaries were held to include this right of discrimination, then under that power the board could, notwithstanding civil service classification, reduce the salaries of employees in some cases to a very nominal amount, and require of such employees the performance of precisely the same duties as other employees, the latter of whom would be receiving a higher salary. In this way the provision of the law that entitles classified civil service employees to a notice of their removal and a statement of the cause therefor, and giving them the right to make written application to the board of civil service commissioners for an investigation of the grounds of their removal, discharge or suspension could be easily nullified. We do not dispute the right of the board to reduce the salaries or the hours of labor of all park department employees within a given classification, but we think it clearly illegal and a violation of the vested rights of employees for the Board of Park Commissioners to transfer certain employees to half-time work at a reduced salary and permit other employees in the same grade or civil service classification to continue at full-time work, and then proceed to fill the vacated positions with other civil service eligibles. To so arbitrarily reduce the status of petitioners from that of full-time employees to that of half-time employees, with a consequent reduction in compensation, served to violate and nullify the provisions of section 112 (a) of the charter, which provides that no person in the classified civil service of the city, other than an unskilled laborer employed by the day, shall be removed, discharged or suspended, except for cause, which cause shall be stated in writing by the board or officer having the power to make such removal, discharge or suspension, and filed with the board of civil service commissioners, with certification that a copy of such statement has been served upon the person or employee so removed, discharged or suspended, personally, or by leaving a copy thereof at his last known place of residence, if such employee cannot be found; and further providing that within fifteen days after such statement shall have been filed the board of civil service commissioners may, upon its own motion or upon written application of the employee removed, discharged or suspended, proceed to investigate the grounds for such removal, discharge or suspension. (*Klein*

v. *Board of Education of San Francisco,* 1 Cal. (2d) 706 [37 Pac. (2d) 74] ; *People* v. *Bundesen et al.,* 277 Ill. App. 169 ; *Kennedy* v. *Board of Education,* 82 Cal. 483 [22 Pac. 1042] ; *Mitchell* v. *Board of Trustees of Visalia Union High School District,* 5 Cal. App. (2d) 64 [42 Pac. (2d) 397] ; *Bois* v. *Mayor of City of Fall River,* 257 Mass 471 [154 N. E. 270] ; *Shannon* v. *City of Los Angeles,* 205 Cal. 366 [270 Pac. 682].) If, as contended by appellants, these petitioners, by reason of the infirmities of age, or otherwise, have become inefficient or incapable of performing their usual duties as gardeners or assistant gardeners in the park department, their removal may be accomplished pursuant to the provisions of the city charter and the civil service regulations; but they are entitled, under the charter provisions, to be informed in writing of the charges made against them and to make application to the board of civil service commissioners to investigate the grounds for such removal, discharge or suspension. To hold otherwise would be to vitiate and destroy every semblance of protection intended to be afforded by the spirit of civil service.

We are cited by both appellants and respondents to the case of *Kabisius* v. *Board of Playground and Recreation of the City of Los Angeles,* 79 Cal. App. Dec. 1156 [39 Pac. (2d) 264], reversing a judgment of the superior court denying a writ of mandate to compel the reinstatement of Kabisius to duty as a beach guard. In this case, however, a hearing was granted by the Supreme Court, and subsequent to the filing of the final brief in the instant case the Supreme Court, in deciding the Kabisius case, affirmed the judgment of the superior court denying the issuance of the writ. (4 Cal. (2d) 488 [50 Pac. (2d) 1040].) We have read the Supreme Court decision in the Kabisius case, but find no analogy between the facts therein and the facts of the case before us. In the Kabisius case the services of the employee were terminated by reason of reduction of force for lack of work and lack of funds, and as the Supreme Court observes in its opinion, section 112 (a) of the charter of the city of Los Angeles provides that the order of any appointing board or officer terminating the services of an employee because of lack of funds in such department shall be final and not be subject to review by the board of civil service commissioners. In the case before us there is no question of lack of funds or

reduction in force, because the evidence in the instant case shows that after the respondents herein were demoted to half-time positions the Board of Park Commissioners proceeded to fill the vacated full-time positions with other eligible civil service employees.

Appellants contend that the writ of *mandamus* may not be resorted to as a means of coercing a board, officer or inferior tribunal's discretion; that *mandamus* may compel a board to exercise its discretion, but cannot direct the manner in which such discretion shall be exercised; and appellants argue that what the Board of Park Commissioners did was merely a discretionary exercise of power, and that therefore the courts have no authority to review the board's action in that regard. Conceding the correctness of this principle, still it has been uniformly held that if a board or commission acts arbitrarily against the vested rights of individuals under the law, and therefore against the law itself, the board has not strictly, as is frequently said, "abused its discretion"—a term which is responsible for some confusion of ideas on this subject—, but in contemplation of law, under those circumstances, the board has not exercised its discretion at all, but has sought to substitute its arbitrary determination in opposition to rights guaranteed individuals by law. In such cases the courts will by *mandamus* compel a recognition by the board or commission of the individual's rights and conformity by the board with the laws governing the procedure prescribed for terminating the vested right of an employee to a position held under civil service regulations. Where, as in the instant case, petitioners were arbitrarily displaced from a position to which they had been regularly appointed, and such displacement was accomplished without conformity with the charter provisions governing removal, the writ of *mandamus* will lie to compel the reinstatement to their positions of employees thus arbitrarily and illegally removed. Section 1085 of the Code of Civil Procedure is authority for resort to the writ of *mandamus* to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by a board, tribunal or officer. (*Spring Valley Water Works* v. *City of San Francisco*, 82 Cal. 286 [22 Pac. 910, 1046, 16 Am. St. Rep. 116, 6 L. R. A. 756]; *Inglin* v. *Hoppin*, 156 Cal. 483 [105 Pac. 582]; *Raisch* v. *Board of*

*Education,* 81 Cal. 542 [22 Pac. 890] ; *Wood* v. *Strother,* 76 Cal. 545, 548 [18 Pac. 766, 9 Am. St. Rep. 249].)

■ Appellants' next contention is that the portion of the judgment directing the city of Los Angeles to draw its warrants in favor of petitioners for the difference in salary actually received by them as half-time employees and that due them as full-time employees cannot be enforced and is invalid in the absence of proof of the availability of funds. It is appellants' contention that payment of the claims of petitioners out of revenues for 1934 to 1936 is forbidden by article XI, section 18, of our state Constitution, prohibiting the city or any of its independent boards from incurring any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the consent of the electors. Appellants argue that there is no evidence or allegation of the availability of such funds in the instant case, and that in the absence of such funds appellants' controller, treasurer and board are forbidden by law to issue warrants or to pay them, as commanded by the judgment herein. While it is our opinion that appellants are foreclosed from raising this contention for the first time on appeal, and that failure of petitioners to allege in their petition the condition of the funds of the city did not render it demurrable, as this was a matter of defense if it existed (*Kennedy* v. *City of Gustine,* 199 Cal. 251, 256 [248 Pac. 910]) ; still, even though the city had set this up as a defense, we do not feel that such a defense is tenable under the facts of this case. It has been repeatedly held by the courts of this state that section 18 of article XI of the Constitution refers only to an indebtedness or liability which one of the municipal bodies mentioned has itself incurred—that is, an indebtedness which the municipality has contracted, or a liability resulting, in whole or in part, from some act or conduct of such municipality. (*Lewis* v. *Widber,* 99 Cal. 412 [33 Pac. 1128].) The clear intent expressed in the constitutional clause was to limit and restrict the power of the municipality as to any indebtedness or liability which it has discretion to incur or not to incur, and in our opinion the salary due an employee is an obligation of the city not responsive to section 18 of article XI of the Constitution. In *City of Long Beach* v. *Lisenby,* 180 Cal. 52, 55, 56, 57 [179 Pac. 198], the Supreme Court deals exhaustively with the history of this constitutional provision, commencing with the

debates in the constitutional convention, and concludes that the application of this provision is limited to those forms of indebtedness and liability which may have been created by the voluntary action of the officials in charge of the affairs of such city, and that it has no application to cases of indebtedness or liability imposed by law or arising out of tort. Clearly the facts in the instant case place it without the pale of the inhibition of the constitutional provision.

■ The next point made by appellants is that petitioners herein are barred by laches. This claim on the part of appellants was not raised by their answer or amendment to their answer to the petition for the writ of *mandamus* in the lower court. Such defense cannot be raised for the first time on appeal, but should have been presented in some manner to the trial court, so that petitioners might have an opportunity to meet it by proofs. (*Parkside Realty Co.* v. *MacDonald,* 166 Cal. 426 [137 Pac. 21]; *La Shells* v. *Hench,* 98 Cal. App. 6, 15 [276 Pac. 377]; *Elliott* v. *Pardee,* 149 Cal. 516 [86 Pac. 1087]; 10 Cal. Jur. 556.)

Appellants in the oral argument of this cause and in their reply brief for the first time contended that the question of reinstatement of petitioners herein is moot. So far as we can gather from the discussion in the briefs, it would appear that after the trial court rendered judgment in favor of petitioners, which included a mandate for their reinstatement, appellants proceeded, in accordance with the provisions of the charter of the city of Los Angeles, to remove petitioners from their positions for cause, by serving upon them appropriate notices. ■ Questions raised for the first time in the oral argument before the appellate court or for the first time in appellants' reply brief will not be considered by us.

For the foregoing reasons, the judgment should be, and the same is, hereby affirmed. The attempted appeal "from all other appealable orders made in the said proceeding" is dismissed.

Houser, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 28, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 29, 1936.