[S.F. No. 23048. In Bank. Mar. 27, 1974.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
LAWRENCE ON TAI HO, Real Party in Interest.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Timothy A. Reardon, Gloria F. DeHart and Rodney J. Blonien, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Spaeth, Blase, Valentine & Klein and W. James Ware for Real Party in Interest.

## OPINION

**MOSK, J.** — The sole issue in this proceeding for writ of mandate is whether under the rule of *People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal. Rptr. 249, 473 P.2d 993], *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119 [95 Cal.Rptr. 524, 485 P.2d 1140], *People* v. *Navarro* (1972) 7 Cal.3d 248 [102 Cal.Rptr. 137, 497 P.2d 481], and *People* v. *Clay* (1971) 18 Cal.App.3d 964 [96 Cal.Rptr. 213] (hg. den.), the district attorney may constitutionally exercise a veto power over the decision of a trial judge to order that a defendant charged with a narcotics offense be "diverted" into a pretrial program of treatment and rehabilitation. (Pen. Code, §§ 1000-1000.4.) We conclude that the court below was correct in ruling such a veto to be violative of the venerable constitutional doctrine of separation of powers (Cal. Const., art. III, § 3), and hence that the writ should be denied.

Penal Code sections 1000 to 1000.4, enacted in 1972, authorize the courts to "divert" from the normal criminal process persons who are formally charged with first-time possession of drugs, have not yet gone to trial, and are found to be suitable for treatment and rehabilitation at the local level. The purpose of such legislation, which has recently been adopted with variations in several of our sister states, is two-fold. First, diversion permits the courts to identify the experimental or tentative user before he becomes deeply involved with drugs, to show him the error of his ways by prompt exposure to educational and counseling programs in his own community, and to restore him to productive citizenship without the lasting stigma of a criminal conviction. Second, reliance on this quick and inexpensive method of disposition, when appropriate, reduces the

clogging of the criminal justice system by drug abuse prosecutions[1] and thus enables the courts to devote their limited time and resources to cases requiring full criminal processing. (See Robertson, *Pre-trial Diversion of Drug Offenders: A Statutory Approach* (1972) 52 B.U.L.Rev. 335, 336-337; Note, *Addict Diversion: An Alternative Approach for the Criminal Justice System* (1972) 60 Geo.L.J. 667, 672-673.)

In California the inquiry into diversion begins with a preliminary screening for eligibility conducted by the district attorney under standards prescribed by the statute. Section 1000 provides that when a defendant is charged with one of six offenses therein specified—principally unlawful possession of narcotics, marijuana, or restricted dangerous drugs—the district attorney will review the defendant's file to determine whether he also meets certain minimum standards of eligibility for the diversion program.[2]

If it appears the defendant may be eligible, the process of adjudication begins. First it is necessary to develop the *facts* bearing on the particular defendant's suitability for diversion. Section 1000.1 assigns that responsibility to the probation department: if the defendant consents and waives his right to a speedy trial, the department will "make an investigation and take into consideration the defendant's age, employment and service records, educational background, community and family ties, prior narcotics or drug use, treatment history, if any, demonstrable motivation and other mitigating factors in determining whether the defendant is a person who would be benefited by education, treatment, or rehabilitation." After further determining which community programs would benefit and would accept the defendant, the probation department reports its findings and recommendations to the court.

The second step is to weigh those and other relevant facts and to make a *decision* either diverting or refusing to 'divert the defendant into a rehabilitation program. Section 1000.2 vests that function in the trial court: "The court shall hold a hearing and, after consideration of the probation department's report and any other information considered by the court to be relevant to its decision, shall determine if the defendant consents to

---

[1]For example, at oral argument counsel for the People stated that in California over 18,000 defendants were diverted pursuant to this legislation during the first 11 months of 1973.

[2]The defendant must have no prior narcotics conviction and no record of probation or parole violations; there must be no evidence of his commission of a narcotics offense other than those listed in the statute; and the offense charged must not involve actual or threatened violence. (Pen. Code, § 1000, subd. (a), subsecs. (1)-(4).)

further proceedings under this chapter and waives his right to a speedy trial and if the defendant should be diverted and referred for education, treatment, or rehabilitation." The period of diversion is limited to a minimum of six months and a maximum of two years, and progress reports must be filed with the court by the probation department. If the defendant is convicted of any offense during that period the. diverted case will be returned to court for resumption of the criminal proceedings; but "If the defendant has performed successfully in the education or treatment program, at the end of the period of diversion, the charges shall be dismissed."

The present controversy arises because of an additional provision of section 1000.2, which purports to subject the court's decision to divert to a prosecutorial veto: the statute declares that the case will not be diverted "unless the district attorney concurs" with the court's decision to do so, and reiterates that the criminal proceedings shall resume if the district attorney does not "consent" to the order of referral.[3]

In the case at bar the district attorney filed an information charging defendant with possession of marijuana, one of the offenses listed in Penal Code section 1000. Defendant thereafter noticed a motion for an order diverting the case pursuant to the program here in issue. Ten days later there were simultaneously filed (1) a "notification" by the district attorney declaring defendant to be eligible for diversion under section 1000, (2) defendant's consent to referral and waiver of a speedy trial, and (3) an order of the superior court referring the case to the probation department and fixing a date for a hearing.[4]

The probation department conducted its investigation and reported to the court that defendant was a 19-year-old college student of exceptional intelligence, the product of a closely knit Oriental family headed by a

---

[3]"The defendant's case shall not be diverted unless the district attorney concurs with the court's determination that the defendant be so referred though such concurrence is not necessary with respect to the program to which the defendant is referred. If the court does not deem the. defendant a person who would be benefited by diversion, or if the district attorney or the defendant do not consent to participate, the proceedings shall continue as in any other case."

[4]These filings are on printed forms, and our examination of the records in related cases suggests they are not atypical. Although section 1000 implies that it is the district attorney who initiates the inquiry into the applicability of this program, in practice the defendants appear to be doing so by serving the district attorney with a notice of motion for an order of diversion, often accompanied by a supporting declaration of eligibility. And although section 1000.1 states it is the district attorney who "shall refer the case to the probation department," such referral is a judicial act and was properly so treated by the parties to this proceeding.

prominent physician. While en route to his family home in Hawaii for Christmas vacation, defendant was arrested at the San Francisco airport in possession of some six ounces of marijuana. He explained to the probation officer that the drug was intended solely for his personal use. A records check disclosed that defendant had no prior arrests or convictions for any offense. The probation report concluded that defendant recognized the seriousness of his conduct, was cooperative with the authorities, and would benefit from formal instruction on drug abuse. It was therefore recommended that defendant be diverted for a period of one year into a program of drug education and counseling under appropriate supervision.

At the hearing the court announced it agreed with the recommendation of the probation report and intended to order diversion. The district attorney, however, refused to give his consent. He expressed a belief that the proposed program of counseling was "inadequate" and that the amount of marijuana here involved was "just a little bit heavy, so to speak, for diversion."[5] These matters were argued, and the court determined that defendant should be diverted despite the district attorney's refusal to concur in that disposition. Accordingly, the court ruled that "The record will reflect we recognize the nature of the statute that says this cannot be done without concurrence of the District Attorney and I find that that part of the statute is unconstitutional as violating the separation of powers—taking power away from the court in the matter of sentencing. Based on my finding, I overrule the—I don't look for the concurrence of the District Attorney as being necessary to diverting this case. I find it to be an appropriate case for diversion and it will be so diverted."

The People now seek a writ of mandate to compel the court to set aside its order of diversion and to proceed on the criminal charge.

The issue of the constitutionality of a prosecutorial veto over an exercise of judicial power has been addressed by our court in a well known series of recent cases. In *People* v. *Tenorio* (1970) *supra,* 3 Cal.3d 89, we considered a provision of former Health and Safety Code section 11718 which prohibited the trial court from exercising its power to strike prior convictions in narcotics cases except upon motion of the district attorney. In language that has since become familiar, we reasoned: "The judicial power is compromised when a judge, who believes that a charge should be dismissed in the interests of justice, wishes to exercise the power to dismiss but finds that before he may do so he must bargain with the prose-

---

[5]On the latter point the district attorney stated that the quantity of marijuana seized gave rise to "some inference" that it may have been held for sale, although the inference was "probably not a provable one." We note the charge filed by the district attorney against defendant was mere possession.

cutor. The judicial power must be independent, and a judge should never be required to pay for its exercise." (*Id.* at p. 94.) We concluded that the provision in question was an impermissible invasion of the constitutional province of the judiciary and therefore violated the constitutional requirement of separation of powers.

Again, in *Esteybar* v. *Municipal Court* (1971) *supra,* 5 Cal.3d 119, we nullified on the same grounds Penal Code section 17, subdivision (b)(5), insofar as it conditioned upon the consent of the district attorney the power of the committing magistrate to determine that a charged offense would be tried as a misdemeanor rather than a felony. In *People* v. *Navarro* (1972) *supra,* 7 Cal.3d 248, we likewise struck down that portion of Welfare and Institutions Code section 3051 which subjected to the concurrence of the district attorney the power of the trial court to civilly commit a defendant to the narcotics addict rehabilitation program in the interests of justice. And in a closely similar context, the Court of Appeal in *People* v. *Clay* (1971) *supra,* 18 Cal.App.3d 964, invalidated the language of Penal Code section 1203 which conditioned upon the district attorney's concurrence the trial court's power to grant probation in the interests of justice.

In the light of these precedents it is clear that if the decision to divert a defendant into a rehabilitation program pursuant to Penal Code section 1000.2 is an exercise of judicial power, it cannot constitutionally be subordinated to a veto of the prosecutor.

The People contend that the decision to divert is merely an extension of the charging process, and hence remains within the traditional zone of the district attorney's discretion. As we explained in *Esteybar,* however, "This argument overlooks the fact that the magistrate's determination *follows* the district attorney's decision to prosecute." (5 Cal.3d at p. 127.) The statutory scheme is expressly declared applicable when and only when the case is "before any court upon an accusatory pleading" (Pen. Code, § 1000, subd. (a)). By the time the case goes through the probation investigation and report prescribed in section 1000.1 and reaches the hearing mandated by section 1000.2, the prosecutorial die has long since been cast. The case is "before the court" for disposition, and disposition is a function of the judicial power no matter what the outcome.

We recognized this principle in *Tenorio,* observing that "When the decision to prosecute has been made, the process which leads to acquittal or sentencing is fundamentally judicial in nature." (3 Cal.3d at p. 94.) The People seek to distinguish the present case by asserting that a decision to divert results neither in the defendant's "acquittal" nor his "sentencing,"

and that a district attorney's refusal to consent to diversion means only that the defendant will go to trial as charged. But this is reading *Tenorio* and the present statute too narrowly.

The principle summarized in the quoted language from *Tenorio* is that when the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the *disposition* of that charge becomes a judicial responsibility. It is true that acquittal or sentencing is the typical choice open to the court, but in appropriate cases it is not the only termination. With the development of more sophisticated responses to the wide range of antisocial behavior traditionally subsumed under the heading of "crime," alternative means of disposition have been confided to the judiciary. The most commonly invoked, of course, is probation; and under the rule of the *Clay* case, the decision to grant probation in the interests of justice is a judicial act within the meaning of the separation of powers doctrine. In turn, civil commitment to the narcotics addict rehabilitation program is a disposition which may be viewed as a specialized form of probation; under *Navarro,* it too is an exercise of the judicial power.

The analogy to the program here in issue is clear: diversion may also be viewed as a specialized form of probation, available to a different class of defendants but sharing many similarities with general probation and commitment for addiction. Like those programs, diversion is intended to offer a second chance to offenders who are minimally involved in crime and maximally motivated to reform, and the decision to divert is predicated on an in-depth appraisal of the background and personality of the particular individual before the court.

A further parallel between these programs lays to rest the People's next contention. It is argued that the diversion hearing is not a typical criminal trial in which the defendant's liberty is placed in jeopardy, but a "quasi-administrative" inquiry into his suitability for a civil treatment program. It is obvious, however, that a court hearing need not be a full-fledged criminal trial in order to constitute an exercise of the judicial power. Whatever label may be attached to it, the diversion hearing mandated by section 1000.2 is by its terms a judicial proceeding. First, the court does not simply rubber-stamp the recommendation of the probation report. Rather, it undertakes a "consideration" of that report and of "any other information considered by the court" to be relevant to the issue. This statutory language clearly contemplates that the court may take evidence, hear argument, and find the operative facts. These are judicial acts. Applicable here is our reasoning in *Esteybar* (5 Cal.3d at p. 127) that "Within the statutory framework, the magistrate at a preliminary hearing acts as an inde-

pendent arbiter of the issues presented by the adversaries. He weighs evidence, resolves conflicts and gives or withholds credence to particular witnesses [citation], and just as these are judicial acts, so is the act of holding a defendant to answer. To accept the People's contention would be to reduce this function to an ex parte act and render meaningless the magistrate's independent determination."

Here too the power to draw legal conclusions from the facts as found is vested in the court: the statute provides that the court, not the district attorney, "shall determine . . . if the defendant should be diverted," and directs resumption of the criminal proceedings if the court, not the district attorney, "does not deem the defendant a person who would be benefited by diversion. . . ." In other words, the district attorney may screen for eligibility, the probation department may investigate the facts, but it is the court which makes the decision. Similarly, in *Navarro* (7 Cal.3d at p. 258) we emphasized that Welfare and Institutions Code section 3051 authorizes the district attorney only to "investigate" the facts bearing on suitability for narcotics addiction commitment, and concluded "There is nothing to indicate that anyone other than the sentencing judge is to weigh these facts and whatever other facts or arguments might be presented at the hearing."

Second, the statute provides that if the defendant fails in the rehabilitation program prescribed by the court in its order of diversion[6] his case will be "referred to the court for arraignment and disposition" as "a regular criminal matter." On the other hand, if the defendant successfully completes the rehabilitation program "the charges shall be dismissed."[7] Under California law, of course, the dismissal of a formally filed criminal charge is a judicial act which can be performed only by the court. (Pen. Code, §§ 1385, 1386; *People* v. *Parks* (1964) 230 Cal.App.2d 805, 812 [41 Cal.Rptr. 329].)

Thus either of the consequences of the decision to divert is itself an exercise of the judicial power. Similar alternatives flow from a successful or unsuccessful period of general probation (Pen. Code, §§ 1203.2-1203.4) or rehabilitation for narcotics addiction (Welf. & Inst. Code, § 3200). In the present context it is immaterial that a defendant enters the latter pro-

---

[6]In this connection we recall that under the statute the district attorney has no veto power "with respect to the program to which the defendant is referred."

[7]In the case at bar, for example, the court provided for this eventuality by ordering the prosecution continued for the one-year period of diversion and directing that "we will calendar it May 15th of next year for review of the case and if he has completed the program, we will take necessary steps at that time."

grams after conviction, rather than before conviction as in the case of diversion. Our decision in *Esteybar* teaches that the issue whether a power is judicial in nature depends not on the procedural posture of the case but on the substance of the power and the effect of its exercise. Here the Legislature's choice of pre-conviction rather than post-conviction intervention is easily understandable in the light of its dual purpose of sparing appropriately selected first offenders the stigma of a criminal judgment and avoiding the delays and costs of unnecessary trials. At whatever stage such intervention occurs, however, it is an integral step in the process leading to the disposition of the case before the court, and therefore constitutes an exercise of judicial authority within the meaning of the constitutional doctrine of separation of powers.

■ At oral argument the People urged for the first time the contention that even if the offending provision of Penal Code section 1000.2 is invalid it is not severable from the remainder of the statute. It has long been deemed improper to raise new points at oral argument, and such questions will ordinarily not be considered. (*Lotts* v. *Board of Park Commrs.* (1936) 13 Cal.App.2d 625, 636 [57 P.2d 215]; *Johns* v. *Baender* (1919) 40 Cal.App. 790, 793 [182 P. 55].) In any event, we resolved essentially the same issue adversely to the People in *People* v. *Navarro* (1972) *supra,* 7 Cal.3d 248, 260-265.

■ We conclude that the provision of Penal Code section 1000.2 requiring the consent of the prosecutor before a trial court may order that a qualified defendant be diverted into a program of education, treatment, or rehabilitation, violates article III, section 3, of the California Constitution.

The alternative writ is discharged and the peremptory writ is denied.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

**CLARK, J.**—I dissent. Regretfully, if the concurrence requirement is unconstitutional, the entire statute must fall.

The majority dismisses the severability issue with the comment that "essentially the same issue" was resolved in *People* v. *Navarro* (1972) 7 Cal.3d 248 [102 Cal.Rptr. 137, 497 P.2d 481]. (*Ante,* p. 68.) The concurrence requirement held unconstitutional but severable in *Navarro* limited the court's power to commit otherwise ineligible persons to the narcotic addict treatment program (Welf. & Inst. Code, § 3000 et seq.). Section 3052 of the Welfare and Institutions Code makes persons con-

victed of certain crimes ineligible for the program. The disqualification was absolute until the forerunner of Welfare and Institutions Code section 3051 was amended to provide that, in unusual cases where the interests of justice would be served, the court could—with the concurrence of the district attorney—commit persons otherwise ineligible under section 3052.[1]

An unconstitutional provision is severable from a statute if the remainder is "complete in itself" and would have been adopted without the severed provision. (*People* v. *Navarro, supra,* 7 Cal.3d at p. 260; *In re Bell* (1942) 19 Cal.2d 488, 498 [122 P.2d 22].) Having reviewed the legislative history, this court conceded: "[I]t is *possible* that the Legislature would not have authorized the court to make commitments, notwithstanding section 3052, without the concurrence of the district attorney." (*People* v. *Navarro, supra,* 7 Cal.3d at p. 262, italics added.) Actually, since the Legislature completely withheld the power initially and then only granted it subject to the express restriction, it is *probable* that the Legislature would not have conferred the power on the courts without the concurrence requirement. Nevertheless, this court held the requirement severable because the will of the Legislature to the contrary was not "manifest." (*Id.*)

While a presumption in favor of severability may ordinarily be appropriate, the contrary presumption should prevail when severance would render a conditional judicial power unconditional. Lest the separation of powers doctrine becomes a guise for judicial arrogation, we should not remove a statutory restraint on a judicial power unless it is clear the Legislature would have conferred the power without it.

The program of diverting narcotics defendants from the criminal process is so revolutionary that the Legislature approved it only tentatively.[2] Therefore, it is certainly not "manifest" that the Legislature would have enacted it without safeguarding the interest of the People by requiring district attorney concurrence.[3]

---

[1]See former Penal Code sections 6450 and 6451. (Added by Stats. 1961, ch. 850, § 2; amended Stats. 1963, ch. 1704, §§ 1, 2, ch. 1705, §§ 1, 2, ch. 1706, §§ 7, 8; repealed by Stats. 1965, ch. 1226, § 1.)

[2]The statute repeals itself on 1 January 1975. (Pen. Code, § 1000.4.)

[3]The judiciary's rigid refusal to share such powers as diversion may be justified by extension of the  separation of powers doctrine to conferred as well as inherent powers (see *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119, 127 [95 Cal.Rptr. 524, 485 P.2d 1140]), but it tends to stifle the legislative innovation required to solve changing social problems.