[Civ. No. 2512. Second Appellate District.—January 14, 1918.]

## THOMAS W. SPIER, Petitioner, v. H. E. PECK, as Treasurer, etc., Respondent.

STATUTORY CONSTRUCTION—RULE.—Statutes are to be so construed as not to give rise to an absurdity in their attempted application and as not to destroy their efficacy as a whole or in substantial part.

ID.—INTENT—NATURE OF EVIL—OBJECT TO BE ACCOMPLISHED.—Strong indices to the legislative intent will always be found upon an inquiry into the nature of the evil sought to be remedied by a statute or into the object to be accomplished by it.

JUVENILE COURT ACT — PROBATION OFFICERS — SUPERINTENDENT OF DETENTION HOME—HOLDING OF TWO POSITIONS PROHIBITED.—Section 18 of the Juvenile Court Act (Stats. 1915, p. 1225), providing, among other things, that all probation officers receiving a salary of seventy-five dollars or more per month shall devote their entire time and attention to the duties of their offices, and no such probation officer while holding such office and receiving salary therefor shall be a candidate or seek the nomination for any other public office

or employment, disqualifies a probation officer from being super-
intendent of the detention home and drawing the salary annexed
to that position.

APPLICATION for a Writ of Mandate originally made to
the District Court of Appeal for the Second Appellate Dis-
trict to compel a county treasurer to pay the warrant of a
county probation officer for acting as superintendent of the
detention home.

The facts are stated in the opinion of the court.

Robert M. Clarke, for Petitioner.

Don G. Bowker, District Attorney, for Respondent.

WORKS, J., *pro tem.*—Petitioner is probation officer of
the county of Ventura and is also acting under appointment
as superintendent of the detention home for the same county,
both of the offices, or positions, having their existence under
what is known as the Juvenile Court Act (Stats. 1915,
p. 1225, Deering's Gen. Laws, Act No. 1770a). The law fixes
petitioner's salary as probation officer at one hundred dollars
per month and as superintendent of the detention home at
fifty dollars per month. Section 18 of the Juvenile Court Act
provides, among other things, ''All probation officers . . . re-
ceiving a salary of seventy-five dollars or more per month shall
devote their entire time and attention to the duties of their
offices, and no such probation officer, . . . while holding such
office and receiving salary therefor, shall be a candidate for
or seek the nomination for any other public office or employ-
ment.'' The petitioner presented to the board of supervisors
of the county his claim for salary for June, 1917, as superin-
tendent of the detention home and the claim was allowed.
The county auditor approved the demand and issued his war-
rant for its payment, but the respondent, who is the county
treasurer, refused to make payment of the warrant upon its
presentation. Thereupon the petitioner instituted this pro-
ceeding to enforce the payment.

The respondent contends that section 18 of the Juvenile
Court Act, in that part of it from which we have quoted, dis-
qualifies the petitioner, while holding the post of probation
officer, from being superintendent of the detention home and,

therefore, from drawing the salary annexed to that position. Can the language forbidding a probation officer to "be a candidate for or seek the nomination for any other public office or employment" receive that construction? Statutes are to be so construed as not to give rise to an absurdity in their attempted application and as not to destroy their efficacy as a whole or in substantial part (*Murphy* v. *City of San Luis Obispo*, 119 Cal. 624, 628, [39 L. R. A. 444, 51 Pac. 1085]; *Hannon* v. *Southern Pacific R. R. Co.*, 12 Cal. App. 350, 355, [107 Pac. 335]; *Madary* v. *City of Fresno*, 20 Cal. App. 91, 96, 97, [128 Pac. 340]), all rules of construction having their existence, of course, for the purpose of ascertaining the intent of the legislature, that being the prime object of the construction and interpretation of statutes. Strong indices to the legislative intent will always be found upon an inquiry into the nature of the evil sought to be remedied by a statute or into the object to be accomplished by it. (*Bannerman* v. *Boyle*, 160 Cal. 197, 200, [116 Pac. 732]; *Patton* v. *Los Angeles Pacific Co.*, 18 Cal. App. 522, 525, [123 Pac. 613]; *Odell* v. *Rihn*, 19 Cal. App. 713, 719, [127 Pac. 802]; *Gise* v. *Myers*, 22 Cal. App. 127, [133 Pac. 500].)

In one of the cases above cited (*Patton* v. *Los Angeles Pacific Co.*), a statute was under review which provided: "An employer is not bound to indemnify his employee for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless the negligence causing the injury was committed in the performance of a duty the employer owes by law to the employee. . . . ; provided, nevertheless, that the employer shall be liable for such injury when the same results from the wrongful act, neglect or default of . . . a coemployee engaged in another department of labor from that of the employee injured, or employed upon a machine, railroad train, switch-signal point, locomotive engine, or other appliance than that upon which the employee is injured is employed. . . . " The facts of the case were that the motorman of an electric interurban car was injured by the negligence of the conductor of another car. The motorman brought suit against the railroad company for damages. His complaint was assailed by general demurrer and in passing

on the demurrer the court said: "The objection urged is that single cars, like those upon which the plaintiff and the negligent conductor were employed, are not to be considered as machines or railroad trains, or to be comprehended within the term 'other appliances' as used in the statute. To our minds, influenced by the consideration that the statute must be given a fair and reasonable meaning and be liberally construed to effect the purposes of its enactment (*Judd* v. *Letts,* 158 Cal. 359, [41 L. R. A. (N. S.) 156, 111 Pac. 12]), this contention of appellant is without merit. From the phraseology of the provision quoted it is evident that the legislature intended to make the law broad in its scope and to preserve the liability of the employer for the employee's benefit in all cases generally where the mechanical device upon which the injured servant is employed is separate and different from that being operated by the negligent employee. By way of closer definition of the department of labor classification, the legislators undertook to and have said in effect that a person is not employed in the same department with another servant where he is at work with or upon a different machine, railroad train, etc.; and in consonance with a rule of fair construction it would be proper to say, if the words 'railroad train' were the only descriptive ones contained in that portion of the statute quoted, that that term as applied to an interurban railway is sufficient to include a single trolley car. Such cars combine in their construction both motors for propulsion and seats for the accommodation of passengers. Used in interurban traffic they perform the same work over long distances as does the steam-propelled train. While a train usually consists of a motor vehicle and cars attached thereto, where these adjuncts are combined in one carriage and serve the same uses, there is no good reason why the one should be said to be a train, within the meaning of the statute, and the other not be so classed. In construing statutes courts are not bound to an interpretation which shall give the words or phrases a literal, close dictionary definition."

In *Odell* v. *Rihn,* 19 Cal. App. 713, [127 Pac. 802], another of the cases we have cited, the litigation was instituted under the following circumstances: At the time the controversy arose section 4014 of the Political Code provided: "The officers of a township are, two justices of the peace. . . . In townships containing cities in which city justices or recorders are elected

there shall be but one justice of the peace, and in townships having a population of less than five thousand there shall be but one justice of the peace. . . . '' It was contended that the city of Richmond was entitled to two justices of the peace under this section. In disposing of the question the court said: ''We are satisfied that the fifteenth judicial township of Contra Costa County was not at the time of the election in 1910 entitled, under the provisions of section 4014 of the Political Code, to more than one justice of the peace. . . . It is conceded that the judicial township in question consists entirely of the city of Richmond, which, although it has a population of more than five thousand, is provided by charter with a city justice of the peace, who is appointed by the city council. His jurisdiction and duties are concurrent and co-ordinate with those conferred generally upon justices of the peace throughout the state. It is petitioner's contention that the term 'elected' as employed in section 4014 of the Political Code, should be construed to mean elected by the popular vote of the people. In this contention we cannot concur. Statutes must be read and considered in conjunction with the legislative intent, and then be liberally construed with the object in view of effecting such intent. In restricting the number of justices of the peace to one in townships which include cities in which city justices or recorders are elected, it was evidently the legislative intent not to burden the people of the state with the expense of maintaining more judicial officers than were actually necessary to the needs of the people. The narrow construction of the statute here contended for by petitioner obviously would result in defeating the legislative purpose and intent in that behalf, and is therefore to be avoided, if possible. The words 'elected' and 'appointed' ordinarily are not synonymous. In its limited sense the word 'elected' is usually employed to denote the selection of a public officer by the qualified voters of a community. On the other hand, the word 'appointed' is generally understood to mean the selection of a public officer by one person who is empowered by law to make the appointment. In its broadest sense, however, the word 'elected' means merely selected. When used in that sense the word 'elected' is synonymous with the word 'appointed'; and where, as in the case at bar, a public officer has been selected by the votes of several members of a city council, it may be truly said in the broadest

sense of the term that he was elected. . . . Having in mind the spirit and purpose of the code section under discussion, it seems to us that the word 'elected,' as used therein, was not intended to apply solely to the election of a city justice by the votes of the people at large; but included as well the selection of a city justice of the peace by the city council or other legislative body in whom the power of election is conferred by law. In other words, it is our opinion that the appointment of a city justice of the peace by the votes of the city council of the city of Richmond was tantamount to the election of such justice of the peace in the sense contemplated by the legislature, and that therefore the fifteenth judicial township of Contra Costa County was entitled to have but one justice of the peace at the time of the election in 1910.''

In the present case we have a potent index to the legislative intent in using the words ''be a candidate'' and ''seek the nomination,'' in the very language of section 18 of the Juvenile Court Act. In the same sentence in which these words are found, and preceding them, it is declared that probation officers ''shall devote their entire time and attention to the duties of their offices.'' It is, therefore, manifestly in aid of this provision that probation officers shall not be candidates nor seek nominations for other offices or employments. But this plain legislative intent will be frustrated and the provision be reduced to an absurdity if the language employed is to receive a literal construction. The time to be expended by a probation officer in seeking or being a candidate for another office or employment would ordinarily be inconsiderable when contrasted with the time expended by him in occupying and discharging the duties of the new office or employment, if his seeking, or his candidacy, were successful. Moreover, a literal construction would serve to disqualify a probation officer who sought another office or employment successfully, but would not disqualify one who procured and occupied another post without actually or technically seeking it. We are convinced that the legislature did not intend such an anomaly to arise through the application of the provision now under examination. When probation officers were commanded not to seek other places, they were disqualified from occupying such places.

The application for a peremptory writ of mandate is denied.

Conrey, P. J., and James, J., concurred.