[Civ. No. 5065. First Appellate District, Division One.—July 29, 1925.]

## ROBERT A. CURTIN, Appellant, v. THE BOARD OF POLICE COMMISSIONERS OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

[1] MUNICIPAL CORPORATION—DISMISSAL OF POLICE OFFICER—MANDA-MUS TO COMPEL REINSTATEMENT — STATUTE OF LIMITATIONS — LACHES.—A proceeding in *mandamus* to compel the reinstatement of petitioner as a police officer after his dismissal from the police department of a city for disobedience of orders, is barred by the statute of limitations and laches, where said petitioner applied for reinstatement almost three years after his dismissal, and such proceeding was brought almost one year after the denial of his application for reinstatement or almost four years after his dismissal, and the vacancy caused by his dismissal was shortly after such dismissal filled by the appointment of another officer to the position.

---

1. See 21 Cal. Jur. 415.

[2] ID.—CONSTRUCTIVE SERVICE OF CHARGES AND NOTICE OF HEARING—
RULES—SAN FRANCISCO CHARTER—CONSTRUCTION.—Section 3 of
rule 41 of the police department of the city and county of San
Francisco allowing constructive service to be made of a copy of
the charges against an accused police officer and notice of time
and place of hearing, where, after due and diligent search he is
reported by competent authority as missing, not only does not
conflict with section 3 of article VIII, chapter III, of the charter
of said city and county, which provides, "No member of the De-
partment shall be subject to dismissal for any cause, or to pun-
ishment for any breach of duty or misconduct therein, except after
a fair and impartial trial before the Commissioners upon a verified
complaint filed with the Board setting forth specifically the acts
complained of, *and after such reasonable notice to him of the
time and place of hearing as the Board may by rule prescribe*,"
but is in entire harmony therewith, is reasonable in its operation
and wholly essential for the orderly and efficient administration
of the affairs of the police department.

[3] ID.—PERSONAL SERVICE UNNECESSARY—EVIDENCE.—In this pro-
ceeding in *mandamus* to compel the reinstatement of petitioner as
a police officer after his dismissal from the police department of
a city for disobedience to orders, the peculiar circumstances of the
case are sufficiently convincing to show that the requirement of
personal service of a copy of the charges and notice of time and
place of trial was not necessary.

[4] ID.—RULES—PENALTY—CHARTER PROVISIONS.—In such proceeding,
there is no merit in petitioner's contention that the rule upon
which the charges against him were based was violative of the
charter in that said rule failed to prescribe a penalty, where sec-
tion 2 of article VIII, chapter VII of the charter itself fixes the
penalties for members "guilty of any offense, or violation of
rules or regulations" of the department, and one of those penalties
is "dismissal from the department."

[5] ID. — VERIFICATION — IRREGULARITIES — LACHES—WAIVER.—In such
proceeding, the questions of the sufficiency of the verification of the
charges and of the charges themselves are, at best, irregularities
which may not be taken advantage of by petitioner on account
of his laches.

[6] ID.—JUDGMENT—PRESUMPTION—JURISDICTION.—In such proceeding,
every presumption is in favor of the validity of the minutes of
the Board of Police Commissioners which, in effect, constitute the
judgment of dismissal and contain recitals showing jurisdiction to
hear and determine the charges; and the judgment of dismissal
by the board was one that was clearly within their power under

---

2.   See 21 Cal. Jur. 396.
3.   See 16 Cal. Jur. 814.

the charter to render, and being valid on its face was and is, in view of the running of the statute of limitations and of petitioner's laches, binding upon petitioner.

(1) 37 **C. J.**, p. 786, n. 26; 38 **C. J.**, p. 831, n. 58.   (2) 28 **Cyc.**, p. 507, n. 78.   (3) 28 **Cyc.**, p. 507, n. 78.   (4) 28 **Cyc.**, p. 503, n. 34. (5) 28 **Cyc.**, p. 519, n. 18.   (6) 28 **Cyc.**, p. 521, n. 40.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed

The facts are stated in the opinion of the court.

J. J. Dunne and R. H. Morrow for Appellant.

George Lull, City Attorney, and Charles S. Peery, Assistant City Attorney, for Respondents.

KNIGHT, J.—On October 14, 1918, the Board of Police Commissioners of the City and County of San Francisco dismissed the petitioner herein, Robert A. Curtin, as a member of the San Francisco police department, for disobedience of orders, to wit, failing to report for duty in compliance with the order of the Police Commissioners and his superior officers. Nearly three years thereafter, to wit, on September 24, 1921, petitioner applied for reinstatement, but his application was denied. About a year subsequent to such denial, and on August 24, 1922, he commenced this proceeding in *mandamus*, against said Police Commission and the individual members thereof, to compel his restoration as a member of said department. Judgment was given for defendants and petitioner appeals.

The findings of the trial court, which, we think, are supported by substantial evidence, disclose the following facts:

For several years prior to his dismissal Curtin had been a police officer in said city, and on September 30, 1918, submitted his resignation to said commission, protesting that he was doing so because he had theretofore applied for a leave of absence for the period of the war, but which leave was not granted. In his resignation he further stated that for the few following months he would engage in agricultural pursuits, and assist in the management of a large cattle

ranch, but if called in the draft he would enter the service and, at the conclusion of the war, demand reinstatement as a member of the police department. On that date, September 30, 1918, said Commissioners, for reasons which appeared to them sufficient, refused to accept said resignation and ordered Curtin to report for regular duty. Under date of October 1st, Curtin sent a second letter of resignation, this time to Captain Shea, his superior officer, stating that in doing so he was protecting his rights to reinstatement; he further added, "I will not report for duty tomorrow, October 1st, 1918." He was, nevertheless, ordered to report for duty on his regular watch commencing the next morning at 8 o'clock, which he failed to do; and thereupon, and on October 2, 1918, Captain Shea filed charges against Curtin, which were verified before Chief of Police D. A. White, charging Curtin with disobedience of orders and specifying the particular acts of such disobedience. Curtin was thereupon suspended from his position and said charges were set for trial on October 7, 1918.

On October 2, 1918, Officer John P. Collins called at Curtin's residence, number 1147 Sanchez Street, in said city, for the purpose of serving copies of said charges, notice of trial and the order of suspension, but was informed by the landlady of said premises that Curtin had departed from San Francisco for Chinese Camp, California. Thereupon said copies were left at said residence in the room occupied by the said Curtin and where his personal effects still remained. On that same day other copies of said documents were posted in a conspicuous place in the Harbor Police Station, that being the station to which Curtin was required to report for duty, and copies of said charges, together with a notice of suspension signed by the chief of police and a notice directing Curtin to appear for trial of said charges on the seventh day of October, 1918, at 7:30 P. M. of said day before the Police Commissioners were also sent by registered mail in the official envelope of said commission, bearing a return indorsement, addressed to the said Robert A. Curtin, at Chinese Camp, California, with the postage thereon prepaid. As a matter of fact, Curtin departed for Tuolumne and Mariposa Counties, on the morning of October 2, passing through Chinese Camp, in order to reach the ranch on which he afterward remained for many

months.  On October 7, 1918, Curtin failed to appear in answer to said charges and the hearing was regularly postponed to October 14, 1918, at which time Curtin again failed to appear; whereupon said Commissioners proceeded with the hearing, received evidence supporting the charges, found Curtin guilty thereof, and by resolution dismissed him from said police department, the vacancy caused by his dismissal being shortly afterward filled by the appointment of another officer to the position. Two days prior to said hearing, to wit, on October 12, 1918, Curtin through one Carlon, a fellow police officer, sent to the office of the chief of police his star, book of rules, and club.

It appears from the evidence that Curtin did not at any time enter the military service.  During the several months he was engaged in cattle raising, he visited San Francisco "very frequently, once a month or once in two or three months in three or four months," the length of these visits being "two or three days, may be one day and may be three days," but that during those visits he did not call upon or get in touch with the police department, nor did he at any time make inquiries as to the disposition of his case before said Commissioners.

Although Curtin denied ever having received said registered letter it was shown that said letter was never returned, and, for the purpose of proving that he did receive it, evidence was offered of certain circumstances showing that the Curtin family was extensively known in Tuolumne County and in the regions of Chinese Camp, also the manner in which they received their mail, and that soon after October 15, 1918, Officer Carlon, who also had relatives living in those parts, while passing through that country, delivered at the Curtin ranch certain mail he had obtained for them on the way in, although in this regard he testified he had no recollection of having delivered a registered letter.  Irrespective of whether or not Curtin did receive said letter the court found that on December 2, 1918, he had actual knowledge of his dismissal, and he admits that during January or February, 1919, he learned of that fact.

Appellant contends, first, that the proceedings pursuant to which he was dismissed from the police force are void for want of jurisdiction, it being claimed that, notwithstanding the rule of the department permitting construc-

74 Cal. App.—6

tive service of the charges and order for trial, the city
charter requires personal service, and does not authorize
constructive service; and, secondly, that assuming construc-
tive service is permissible, no compliance with the construc-
tive service rule of the police department (rule 41) has
been established.

[1]   Respondents urge at the outset that in view of the
facts already related and the further fact that appellant's
proceeding was not commenced until nearly four years after
his dismissal, his cause of action, if any he had, became
barred by the statute of limitations (subd. 1, sec. 338, Code
Civ. Proc.), and by laches. Such were the conclusions
reached by the trial court, there being express findings to
the effect that said statute of limitations applied and also
that the proceeding was barred by the laches of appellant in
delaying the bringing of said proceeding for more than three
years.

We are of the opinion that the contentions made by re-
spondents and the conclusions reached by the trial court
must be sustained (*Wittman* v. *Board of Police Commis-
sioners,* 19 Cal. App. 229 [125 Pac. 265]; *Kramer* v. *Board
of Police Commissioners,* 39 Cal. App. 396 [179 Pac. 216];
*Donovan* v. *Board of Police Commissioners,* 32 Cal. App.
392 [163 Pac. 69]; *Harby* v. *Board of Education,* 2 Cal.
App. 418 [83 Pac. 1081]; *Jones* v. *Board of Police Commis-
sioners,* 141 Cal. 96 [74 Pac. 696]). In *Wittman* v.
*Board of Police Commissioners, supra,* where a three-
year period elapsed before suit was brought, it was
said: "Appellant was in form dismissed from the depart-
ment on the twenty-fourth day of March, 1905, and
ever since has been debarred from exercising any of the
functions of a member of the department. For reasons
not now necessary to be discussed, he claims that such
attempted dismissal was illegal and void, and did not have
the effect to remove him from his position of captain of
police. It is the dismissal from the department that really
lies at the bottom of appellant's cause of action. It is
this alleged wrong that he seeks to have redressed by the
action of the court invoked more than three years after its
commission. The denial of his right to hold a position in
the police department occurred when he was formally dis-
missed by the Board of Police Commissioners from the de-

partment. This dismissal occurred at a definitely fixed time, and was an unequivocal denial of his right to longer hold the position of captain of police or any other position in the department. If his contention as to the illegality of such dismissal is well founded, he could immediately upon his dismissal have perfected his right to the remedy by mandate by making his demand for reinstatement or assignment to duty as such captain of police. These considerations bring the case within the rule followed and recognized in many cases, that where a right has fully accrued except for some demand to be made as a condition precedent to legal relief, which the claimant can at any time make if he so chooses, the cause of action has accrued for the purpose of setting the statute of limitations running. (*Palmer* v. *Palmer,* 36 Mich. 487 [24 Am. Rep. 605]; *Harrigan* v. *Home Life Co.,* 128 Cal. 531, 548 [58 Pac. 180, 61 Pac. 99]; *Union Sav. Bank of San Jose* v. *Leiter,* 145 Cal. 696 [79 Pac. 441]; *San Luis Obispo* v. *Gage,* 139 Cal. 398 [73 Pac. 174]; *Barnes* v. *Glide,* 117 Cal. 1 [59 Am. St. Rep. 153, 48 Pac. 804].) In considering the same question in the case of *Kramer* v. *Board of Police Commissioners, supra,* the court used the following language: "In addition to these deficiencies in the plaintiff's petition, it may be further stated that no showing whatever is made that the position in the police department vacated by the plaintiff's resignation has not been long since filled, or that his reinstatement after so long a period has elapsed (more than three years) would not result either in ousting a successor, or in entailing the payment on the part of the municipality of two salaries for the same position. We think as to this latter point that upon the plaintiff's own affirmative showing, as well as by these deficiencies therein, he was debarred by laches from the remedy which he sought and obtained by the judgment and order for the issuance of the writ from which this appeal has been taken (*Harby* v. *Board of Education,* 2 Cal. App. 418 [83 Pac. 1081]; *Donovan* v. *Board of Police Commissioners,* 32 Cal. App. 392 [163 Pac. 69].)" In *Donovan* v. *Board of Police Commissioners, supra,* in holding that a delay of fourteen months after dismissal was a bar to the remedy of *certiorari,* the court was even more emphatic in applying the doctrine of laches, saying: "In the

absence of a showing sufficient to excuse this delay it certainly constituted laches. While it is true, as counsel for the plaintiff contends, that mere lapse of time short of that prescribed by a statute of limitations in any given similar case will not in itself suffice to constitute laches so as to bar a remedy, nevertheless, if in addition it appears from all the circumstances of the case that prejudice must or, from the very nature of the case, may be reasonably expected to result, the remedy will be denied (*Cahill* v. *Superior Court*, 145 Cal. 42 [78 Pac. 467]; *Cook* v. *Ceas*, 147 Cal. 614 [82 Pac. 370]; *McGibbon* v. *Schmidt*, 172 Cal. 70 [155 Pac. 460]) ; and, whenever public inconvenience might result from the annulment of the proceedings sought to be reviewed, the rule of laches relative to applications for the writ is applied and enforced with particular strictness. (4 Standard Encyclopedia of Law and Procedure, 912.) As was stated in the case of *Murphy* v. *Keller*, 61 App. Div. 145 [70 N. Y. Supp. 405] : 'In all proceedings of this character, where a person removed from public office is entitled to receive from the public compensation for the services he performs, if he intends to insist that his removal was illegal, or that the law entitles him to be reinstated, his application for reinstatement should be promptly made so as to protect the city from the necessity of paying two persons for the same services.' It would be contrary to common knowledge of the needs of the police department of a great city, and the well-known practice of the appointing powers to fill vacancies created in such department, to suppose that the defendants in the present case allowed the vacancy created by the dismissal of the plaintiff to long remain unfilled; and therefore it may fairly be said that the particular circumstances of the case as disclosed by the petition for the writ show with sufficient certainty that prejudice as a result of the plaintiff's laches would follow the granting of the writ.''

Between the time of appellant's dismissal and the date on which he commenced this proceeding the deaths of Chief of Police White, Captain Shea and Officer Douglass occurred, all of whom would have given material evidence to refute some of the numerous points of irregularity made by appellant against the validity of the dismissal proceedings, and the deaths of whom may be considered as having an im-

portant bearing upon the application of the doctrine of laches.

We are convinced that the situation in the instant proceeding has been brought clearly within the rule of the cases above cited, which rule obviously disposes of all questions of alleged irregularity made against the validity of the dismissal proceedings, with the possible exception of the one relating to the asserted conflict between said departmental rule number 41 and the charter provision in reference to the service upon the accused officer of copies of the charges and notice of trial. Assuming that appellant may still attack the dismissal proceedings upon that ground, we are of the opinion that appellant's contention is not maintainable. [2] We believe that said rule allowing constructive service to be made under the circumstances stated in the rule, not only does not conflict with the charter provision, but is in entire harmony therewith, is reasonable in its operation and wholly essential for the orderly and efficient administration of the affairs of the police department. The charter in this respect provides that the Board of Police Commissioners has power ''To prescribe rules and regulations for the government, discipline, equipment and uniform of the Department, and from time to time to alter or repeal the same, and to prescribe penalties for the violations of any such rules and regulations.'' (Subd. 2, sec. 1, chap. III, art. VIII.) Section 3 of this same article provides: ''No member of the Department shall be subject to dismissal for any cause, or to punishment for any breach of duty or misconduct therein, except after a fair and impartial trial before the Commissioners upon a verified complaint filed with the Board setting forth specifically the acts complained of, *and after such reasonable notice to him of the the time and place of hearing as the Board may by rule prescribe. . . .* '' (Italics ours.)

Section 3 of rule 41, the validity of which is challenged, reads: ''3. When, after due and diligent search, a member or employee of the Police Department is reported by competent authority as missing, and in such case as said absence prevents personal service of notice and copy of charges filed against him, and is, in itself, a violation of the Rules and Regulations of the Department, reasonable notice of the

time and place of hearing within the provisions of Section 3 of Chapter VII of Article VIII of the Charter of the City and County of San Francisco shall be deemed as follows: A copy of the charges, setting forth the time and place of hearing, with notice to report to answer said charges, shall be sent by mail to the defendant's last known place of residence, at least five days previous to the time set for the hearing of the charges, and a written notice addressed to the defendant ordering him to report to answer charges, setting forth the fact that charges have been filed against him; the particulars of time and place of hearing shall be conspicuously posted in the Station or place where the defendant should report for duty at least five days previous to the time set for the hearing of the charges.''

[3]  Besides the fact that there is nothing in the language of the charter provision indicating that only personal service is permitted, we think the peculiar circumstances of this case are sufficiently convincing to show that the requirement of personal service is not, and ought not be, necessary.  Appellant was a member of the department, and therefore subject to and had knowledge of its rules and regulations.  Owing to the exigencies of war the ranks of the police department were being depleted of its younger members so that a real demand for police officers existed.  In open defiance of the order of the commission that appellant remain on duty as a member of the department rather than take up agricultural pursuits, he quit the department, and left the city for regions wherein it was extremely impractical, if not impossible at that season of the year, to secure personal service upon him, and knowing, too, that charges of disobedience and dismissal would necessarily follow the order of the commission refusing his resignation.  If, under those or like circumstances—for instance, an officer leaving the state without permission, or embarking upon the high seas—the department were compelled to suspend action in reference to his case, and thus allow the vacancy caused by his absence to remain unfilled until personal service could be had upon the absentee, the administration of police affairs would apparently be much interfered with if not seriously impaired.  As before stated, the language of the charter provision does not in terms require personal notice, and, moreover, no reason has been

presented to show that such was the intent or meaning thereof.

[4] There is no merit in appellant's contention that the rule upon which these charges were based was violative of the charter in that said rule failed to prescribe a penalty. Section 2 of article VIII, chapter VII of the charter itself fixes the penalties for members "guilty of any offense, or violation of rules or regulations" of the department, and one of those penalties is "dismissal from the department."

[5] The questions of the sufficiency of the verification of the charges and of the charges themselves are, at best, irregularities which, as already pointed out, may not be taken advantage of by appellant on account of his laches.

[6] The minutes of the Board of Police Commissioners, which, in effect, constitute the judgment of dismissal, contain recitals showing jurisdiction to hear and determine the charges. Every presumption is in favor of the validity thereof (*Gaylord* v. *Pasadena*, 175 Cal. 433 [166 Pac. 348]). The judgment of dismissal by the Board was one that was clearly within their power under the charter to render, and being valid on its face was and is, in view of the running of the statute of limitations and of appellant's laches, binding upon appellant (*People* v. *Greene*, 74 Cal. 400 [5 Am. St. Rep. 448, 16 Pac. 197]).

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.