[Civ. No. 12271.   First Dist., Div. One.   May 6, 1943.]

·JOHN B. SNYDER, Appellant, v. CITY OF ALAMEDA
et al., Respondents.

J. W. O'Neill for Appellant.

H. Albert George, City Attorney, for Respondents.

KNIGHT, J.—This is an appeal on the judgment roll from a judgment denying petitioner a writ of mandate whereby he sought to compel the Pension Board of the City of Alameda to grant him a pension to which he claimed he was entitled under section 5 of an ordinance of said city (No. 276, N. S.) "providing for a relief, health, life insurance and pension fund for members of the fire and police departments of the city of Alameda." The cause was tried on the pleadings and stipulations of counsel, and the sole question presented by the appeal is one of statutory construction.

The pension fund created by the ordinance is built up of fines collected, by contributions of certain amounts by the city, and deductions from the monthly salaries of each member of the police and fire departments; and the ordinance provides for the granting of several separate and distinct pensions, three of which are as follows: Section 2 provides that after a person has served a period of 25 years or more, the Pension Board either of its own motion or on application of the employee shall retire the employee from active service on a monthly pension equal to one-half of the salary paid to members of his rank. Section 3 provides for retirement at half salary at any time for disability; and section 5, which is the particular section in question here, reads as follows: "Any person having served ten (10) years or more as a member of the regularly constituted Fire or Police Department shall, if he be removed from said Fire or Police Department for any cause other than conviction of a felony; notorious or consecutive insubordination or neglect of duty; or in case of voluntary or involuntary resignation, be entitled to all the provisions of Section 2 of this ordinance, in the proportion that the number of years he has served in either of said departments bears to twenty-five (25) years."

Appellant entered the employ of the city of Alameda as a fireman on February 1, 1930, and he continued to serve as such up to December 8, 1941, covering a period of 11 years and 10 months. On that date he presented his resignation and it was accepted. But the board refused to allow him the pension provided for by section 5 of the ordinance. It is appellant's contention that construed by itself and in the light of the other provisions of the ordinance, the clear import and intent of said section 5 is that if after having served 10 years a member of either of the departments mentioned there-

in resigns, voluntarily or involuntarily, and his resignation is accepted, he is entitled as a matter of right to the reduced amount of pension provided for therein. The position taken by the respondents is that the terms "conviction of a felony; notorious or consecutive insubordination or neglect of duty; or in case of voluntary or involuntary resignation" must be read together, and are definitive of the instances in which a person who has served 10 years or more will not be entitled to a pension; that therefore, since appellant voluntarily resigned, he forfeited his right to the pension.

The decisions hold uniformly that laws and ordinances providing for the payment of pensions after specified years of service are sustained as valid and constitutional on the ground that they are in the nature of compensation for services rendered (*Douglas* v. *Pension Board*, 75 Cal.App. 335 [242 P. 756]; *O'Dea* v. *Cook*, 176 Cal. 659 [169 P. 366]), and that this is especially true where as here monthly deductions are made from the employee's salary which go into the pension fund. The ordinance here involved was in force at the time appellant became a member of the department; and as said in *O'Dea* v. *Cook, supra,* pension provisions become a part of the contemplated compensation for services to be rendered and in a sense form a part of the contract of employment. Mainly for the reasons stated the courts have repeatedly declared that pension laws are to be liberally construed and if any doubt remains in regard to the proper construction of a pension statute, that doubt must be resolved in favor of the person claiming the right to the pension. (*O'Dea* v. *Cook, supra; Aitken* v. *Roche,* 48 Cal.App. 753 [192 P. 464]; *Casserly* v. *City of Oakland,* 215 Cal. 600 [12 P.2d 425]; *Dillard* v. *City of Los Angeles,* 20 Cal.2d 599 [127 P.2d 917].)

Both parties to this proceeding state that said section 5 is awkwardly drawn, and apparently the dispute over its meaning is brought about largely by the punctuation employed in framing the section; that is, by the presence of the semicolons after the words "felony" and "duty." However, in this connection the courts have held that an awkwardly and loosely drawn statute should be so construed as to remove its inconsistencies and to give to it the most reasonable solution permissible, even though such construction is not entirely satisfactory; and that in arriving at a solution, punctuation is never a controlling factor; that it may be entirely dis-

regarded when necessary to ascertain the true intent and meaning. (23 Cal.Jur. pp. 734, 735.) Moreover, it is held that in construing statutes courts are not always bound by the grammar, and that grammatical construction may be disregarded if necessary to ascertain and give effect to the true intent and meaning. (23 Cal.Jur. 734.)

Considered in the light of the foregoing legal doctrines and the other provisions of the ordinance, it is our opinion that the construction of said section 5 contended for by appellant must be sustained. As will be noted, the section deals with two distinct methods of termination of employment after service of ten years; the first is by removal, which of course means the discharge of the employee for cause, and this is accomplished by the act of the employer; the second is by way of resignation, voluntary or involuntary, which is brought about by the act of the employee. It will be seen, therefore, that the words "removed" and "resignation" as there used convey opposite meanings; and that the two methods of termination of employment therein set forth are not only separated by a semicolon after the word duty, but the resignation clause is preceded by the words "or in case of," thus emphasizing the two separate and distinct thoughts. Then again it is significant that the portion of the section dealing with removal starts out with the words "if he be removed", whereas that portion relating to resignation starts with different words, to wit, "or in case of," indicating an intention to separate the two ideas.

Moreover it is a well established rule of statutory construction that where the language of a statute is susceptible of two constructions, one of which in its application will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted. (23 Cal.Jur. p. 766; *Spier* v. *Peck*, 36 Cal.App. 4 [171 P. 115]; *Goldsmith* v. *Board of Education*, 66 Cal.App. 157 [225 P. 783]; *Aggeler* v. *Dominguez*, 217 Cal. 429 [19 P.2d 241]; *Reuter* v. *Board of Supervisors*, 220 Cal. 314 [30 P.2d 417].)

Assuming, therefore, that by reason of the incorrect punctuation or erroneous grammatical construction, the provisions of said section 5 are open to two constructions, it is manifest that if respondents' construction be adopted and the resignation clause be read into and made part of the exclusionary removal clauses which operate to deprive an employee of his

right to any pension, it would result in bringing about not only an unfair and unreasonable result, but an apparently ridiculous situation. For example, it will be noted, under the provisions of said section 5 it is not in all cases of removal that an employee is deprived of the pensions provided for therein. It is only in cases where the removal is for conviction of a felony, notorious or consecutive insubordination or neglect of duty. In all other cases of removal, regardless of the cause, he is entitled as a matter of right to receive the pension. Those causes may be drunkenness, the commission of any sort of a misdemeanor, offenses involving moral turpitude (if they do not amount to a felony), or as held in *Daly* v. *Otis*, 92 Cal.App. 242 [267 P. 921], wherein this same section of the ordinance was under review, "absence without leave." But, adopting respondents' construction, if an employee with ten years of clean record and honest and faithful service chose to resign, he would not be allowed to stand on an equal footing with those who are removed for drunkenness, commission of misdemeanors, etc., and as in those cases, be allowed a pension, but would be placed in the classification of those removed for felony, notorious or consecutive insubordination or neglect of duty, and thus deprived not only of the right to a pension, but to a return of any part of the money deducted from his monthly salary for the pension fund during the preceding ten years. Such construction, in our opinion, would not only be illogical, unreasonable and unfair, but would be contrary to the intention of the voters by whom the ordinance was adopted.

Respondents do not contend that the provisions of said section 5 will not support the construction contended for by appellant; but they urge that such construction would be unreasonable. In this regard they argue that thereunder an employee facing charges of conviction of a felony, notorious or consecutive insubordination or neglect of duty, could circumvent the ordinance by resigning before the charges were heard and determined. But that is not true, for as held in the case of *Curtin* v. *Board of Police Commissioners*, 74 Cal.App. 77 [239 P. 355], the board is not bound to accept the resignation of the employee. It may refuse to do so prior to the filing of the charges or thereafter, and if those charges are afterwards filed it may dismiss him notwithstanding he has attempted to resign.

In the present case it appears that at the hearing before the pension board on January 7, 1942, the city introduced in evidence a document addressed to the city manager by the chief of the fire department from which document it appears that on Saturday, December 6, 1941, appellant had been suspended from duty for intoxication, and he was therein charged with a violation of certain departmental rules and his dismissal from the department was requested. The following Monday appellant resigned. It is apparent that when this document was filed with the city manager two courses were open to the city. It could have charged appellant before the proper board with drunkenness, and had him removed on that ground, in which event he would have received the pension; or it could have charged him with notorious or consecutive insubordination or neglect of duty, and if removed on that ground he would have been deprived of the pension. But neither of those courses was followed. His resignation was accepted; consequently, under section 5 of the ordinance, if it has been here correctly construed, he was entitled to the pension.

Respondents further contend that the obvious intent of the ordinance, when read as a whole, is that an employee "should serve the city for at least 25 years before he has the option, on his own initiative, to demand a pension as a matter of right." But under the construction here given section 5 he would not be entitled to a pension as a matter of right prior to 25 years service, for, as already pointed out, it is within the power of the board at all times to refuse to accept his resignation; and if after it has declined to do so, the employee nevertheless refuses to perform his duties, he may be charged, under the rule of the Curtin case, with notorious or consecutive insubordination or neglect of duty, and, if removed, thus deprived of any pension rights. Here, however, appellant's resignation was accepted.

Another argument advanced by respondents is that the actuarial set-up of the pension system in the ordinance indicates that there was no intention to provide a pension for an employee whose resignation is accepted after only ten years of service. However, no evidence whatever was introduced on that subject, and in the absence of any facts, it is not a matter that can be intelligently considered.

Nor was any pleading filed or evidence offered raising the question of contemporaneous administrative construction, so

that such issue is not here involved. Whatever remaining points are urged by respondents in support of their position are, in our opinion, without merit.

The judgment is reversed.

Peters, P. J., concurred.

WARD, J.—I dissent. The dispute here involves the interpretation to be given a pension ordinance. The facts are set forth in the majority opinion, including reference to two letters introduced by respondents for the limited purpose of showing the circumstances under which appellant proffered his resignation, namely, that he, a member of the Fire Department, was at the time "on the carpet" for having reported for duty several times in an intoxicated condition. The fact is not denied that at the time of his resignation charges for dismissal on the ground that for the third time he had reported for duty in such condition were pending. He had been theretofore charged with violations of the rules of the department and, as stated in the majority opinion, had on one occasion been suspended. Under the circumstances, his resignation could have been refused and he could possibly have been declared guilty of "consecutive" neglect of duty, and suspended or dismissed. His resignation was accepted. It further appears that at the time of his proffered resignation, two days before its actual presentation and acceptance, (at which time he was unable to write because of intoxication), he demanded the return of money imposed on two occasions as a fine. To my mind it is inconceivable that in accepting the resignation any one in authority thus exercising leniency toward appellant ever imagined that he would thereafter apply for a pension.

The majority opinion admits that two interpretations of section 5 of the ordinance are reasonably possible, but holds that the one adopted in favor of appellant, permitting him to resign and obtain a pension, is the more reasonable.

Section 5 contemplates that if an employee is dismissed for a trivial offense, not a felony and not a notorious and consecutive dereliction of duty, he may be entitled to a pension. (*Daly* v. *Otis*, 92 Cal.App. 242 [267 P. 921].) In the Daly case, so strongly relied upon in the majority opinion, it does not appear that the appellant resigned. The question of

resignation played no part in the decision, the appellant having neither "voluntarily nor involuntarily resigned."

Where the language of a pension ordinance is susceptible of more than one interpretation, it should be construed liberally in favor of the person claiming the pension unless such construction would produce unfair, unreasonable and impractical consequences. In ascertaining the meaning of the loosely drawn ordinance herein, grammatical construction and punctuation should not be given controlling weight, particularly when the provision whose meaning is sought is, as admitted in the majority opinion, ambiguous, and it appears from other provisions or from the entire ordinance that a reasonable and practical construction may be given by avoiding niceties of punctuation which may lead to a' conclusion inconsistent with the purpose of the ordinance. Under such reasonable construction, the questioned terms in section 5 appear to be and are exclusionary and definitive of the instances in which an employee, who has served for ten and less than twenty-five years, is not entitled to a pension.

Under the provisions of the ordinance three methods of discontinuance of service (eliminating death) are contemplated: 1. Retirement, 2. Removal, 3. Resignation by (a) operation of law, (b) an act of a governmental body, and (c) an act of the employee.

In order to secure retirement from a governmental body the applicant must still be a member of such body. The filing of an application for retirement does not *ipso facto* terminate his connection with the department, board or commission. "It is necessary that an order of retirement be duly made." (*MacIntyre* v. *Retirement Board of San Francisco*, 42 Cal. App.2d 734 [109 P.2d 962].) When made, the matter is at an end except for the right to apply to the courts to modify or set it aside. The same rule applies to a resignation. (*Kramer* v. *Board of Police Commissioners*, 39 Cal.App. 396 [179 P. 216]; *Curtin* v. *Board of Police Commrs.*, 74 Cal.App. 77 [239 P. 355].)

In the present case it is not contended on appeal that appellant was coerced or unfairly or unduly persuaded to resign, although by answer the respondents averred that the resignation was offered "for the purpose of evading a trial on written charges for dismissal." "The voluntary resignation of a public employee from his position operates, however, as a complete severance therefrom, and the loss of right to the

position and of all rights, benefits, or emoluments thereof, including all pension rights.'' (40 Am.Jur., 984-985.) This rule has been adopted in California, where in *Kramer* v. *Board of Police Commissioners, supra,* appellant claimed he had been coerced into an involuntary resignation. The court there said (p. 400) : ''Measured by these definitions it must be concluded that the plaintiff's resignation from the police department was not induced by either duress or coercion, but that the same was voluntary, and hence, upon its acceptance by the board of police commissioners, worked a final severance of the relation of the plaintiff as a police officer with the police department of the city and county of San Francisco.'' In *Moreno* v. *Cairns,* 20 Cal.2d 531, 534, 535 [127 P.2d 914], the court said: ''The petitioner contends that since his separation from the department was effected by resignation under duress, and not by unlawful suspension, lay off, or discharge, he was not required to present a written demand before filing his petition for a writ of mandate. This contention overlooks the fact that a resignation is characteristically the voluntary surrender of a position by the one resigning made freely and not under duress. . . . Whenever a person is severed from his employment by coercion the severance is effected not by his own will but by the will of a superior. . . . Petitioner's emphasis upon the coercion that forced his resignation is prompted by the fact that there can be no reinstatement after a voluntary resignation. (*Kramer* v. *Board of Police Commissioners,* 39 Cal.App. 396 [179 P. 216].)'' In the Moreno case upon the facts the court affirmed the judgment against the petitioner, an assistant chief of the fire department.

In my opinion, a fair interpretation of the clause dealing with resignations as applied to appellant is that, not having been retired or removed, upon the acceptance of his resignation, whether voluntary or involuntary, his connection with the department was at an end. This is not a proceeding to set aside the presentation or acceptance of a voluntary or involuntary resignation.

The petition alleges that the pension fund is for the benefit of the ''members'' of the department and contains the further averment that petitioner's employment ceased upon acceptance of his resignation.

The ordinance provides that those granted the benefit of pensions shall report to the chief of the department at stated

periods and may, in a public emergency, be assigned to perform certain duties. (Sections 8 and 10 of the ordinance.) If appellant's connection with the department had ceased, the department had no further control over him.

From a practical standpoint the construction placed upon the terms of section 5 by the majority opinion would encourage an employee against whom charges warranting dismissal or less than dismissal are pending or about to be filed, or who has been convicted but not formally dismissed from the department, to resign and so secure a pension. It might encourage employees in good physical condition to resign after ten years of service, and, while taking advantage of the pension provisions, perform employment for compensation elsewhere. It would permit an employee within the ten year service, who had been denied a pension for disability, to defeat the purpose of the disability section (3(a)) of the ordinance and receive a pension by resignation. It is conceivable that a large number in the ten year class might at this time be tempted to apply for pensions, and in addition take advantage of the present high wages on the outside. Regardless of motive, however, or the amount of such wages, the whole scheme or plan to award pensions would fail in that case by reason of the financial inability of the pension body to carry the burden.

When a person agrees to accept a governmental position with pension rights, he impliedly contracts, unless health or unforeseen circumstances prevent, to serve for the ordinary period, at the termination of which he becomes entitled to retire on account of age or service. (*Dryden* v. *Board of Pension Commrs.*, 6 Cal.2d 575 [59 P.2d 104]; *Brooks* v. *Pension Board*, 30 Cal.App.2d 118 [85 P.2d 956].) In *Douglas* v. *Pension Board*, 75 Cal.App. 335, 340-341 [242 P. 756], the court said: ''The considerations upon which a government adopts, as a part of its administrative policy, a system for the pensioning of those who have continuously, for a specified period of years, served the government in the performance of public civil duties, both as officers and employees, are, in a large measure, . . . To safeguard or insure such officers or employees against a possible condition of penury and want when, after giving the best part of their lives, both in point of time and service and ability, to the service of the public, are no longer able to perform, to the degree required, labor of any character or kind. A more just and humane con-

sideration of the class or classes of persons for whom such a provision is made by a government can hardly be conceived. . . . *It should not be so construed and administered as to confer its benefits upon those not actually entitled thereto.''* (Italics added.)

The wording of the section in question may easily be construed technically in favor of respondents as the majority opinion holds. In my opinion the punctuation and intricacies of phraseology may be disregarded. ''The fact that an act was carelessly and awkwardly drawn, or that some of its terms are inapt and susceptible of two or more interpretations, does not excuse the courts from attempting to ascertain the legislative intent or authorize them to enlarge the plain meaning and effect of an act. An awkwardly and loosely drawn statute should be so construed as to remove its inconsistencies as well as to obviate constitutional objections, and the courts will give to it the most reasonable solution permissible, even though it is not entirely satisfactory.'' ''We have noticed the general rule that the meaning of a statute is to be sought in the language used by the legislature. But this does not mean that the courts are always to be governed by the exact phraseology and literal meaning of every word or phrase employed. The primary rule of intention is to be first applied. And intention may be ascertained, in doubtful cases, not only by considering the words used, but also by taking into account other matters, such as the context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, contemporaneous construction, and the like. In other words, the courts will not blindly follow the letter of a law, when its purpose is apparent, to consequences which are inconsistent with that purpose; and this would seem to be particularly true when the results of a literal interpretation, if adopted, would be absurd, and unjust, or where rights of the public are involved.'' (23 Cal.Jur., secs. 112, 113, pp. 734, 734-735-736.)

One reason given in the majority opinion for the adoption of appellant's view as to the construction is that if respondents' interpretation is correct, appellant would be ''thus deprived not only of the right to a pension, but to a return of any part of the money deducted from his monthly salary for the pension fund during the preceding ten years.'' No issue involving

the return of "money deducted" is raised by the pleadings; no finding is made thereon, and, as far as I have been able to ascertain, neither in appellant's nor respondents' briefs is there any mention of the matter. My only comment is to adopt the language used in *MacIntyre* v. *Retirement Board of San Francisco, supra,* as follows: "No demand for accumulated contributions appears in the record, and the matter not being an issue on this appeal, it is not necessary to determine any question in relation thereto."

I respectfully submit that under a reasonable interpretation of the concededly awkward punctuation and phraseology, under the facts, and in the interest of justice, this judgment should be affirmed.

A petition for a rehearing was denied June 5, 1943. Ward, J., voted for a rehearing. Respondents' petition for a hearing by the Supreme Court was denied July 1, 1943. Edmonds, J., Traynor, J., and Schauer, J., voted for a hearing.