[Civ. No. 23597. First Dist., Div. Four. Aug. 1, 1967.]

ALBERT L. CRYOR, Plaintiff and Appellant, v. STATE PERSONNEL BOARD et al., Defendants and Respondents.

Walter F. Calcagno for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendants and Respondents.

CHRISTIAN, J.—Albert L. Cryor, a senior employee in the State Banking Department, appeals from a judgment denying his petition for a writ of mandate to compel the State Personnel Board to restore him to his former position as chief bank examiner. No issues of fact were developed by the pleadings; the case was submitted for decision upon the petition and the answer. The appeal is on the judgment roll, and the facts recited in the following narrative are derived from the petition and its attached exhibits.

The State Banking Department is headed by the Superintendent of Banks, an officer appointed by the Governor. (Fin. Code, § 211.) The Superintendent of Banks is entitled to make one policy-level appointment exempt from the requirements of the civil service system. This ''exempt appointment'' is to the position of chief deputy superintendent of banks. (Fin. Code, § 230.) Next in the hierarchy of the department, during the period here in question, were two positions of chief bank examiner. Before the period of our concern, these positions were required to be filled in compliance with the procedures of the state civil service system. Under those procedures respondent Hillebrandt was promoted to one of the chief bank examiner positions on November 1, 1957. On August 7, 1962, Hillebrandt was appointed by the superintendent to the ''exempt'' position of chief deputy superintendent of banks. On October 16, 1963, respondent Tauffer received a permanent civil service appointment as chief bank examiner, filling the

vacancy created by Hillebrandt's promotion. Tauffer's appointment was subject to whatever right of reinstatement Hillebrandt would have upon leaving the exempt position of chief deputy. (Gov. Code, § 19142.)

Meanwhile, the Legislature in 1963 made provision by statute for a new kind of civil service appointment called a " 'career executive assignment.' " (Gov. Code, §§ 19220-19222.) The new statute drew upon ideas first advanced in 1955 by the "Hoover Commission" appointed by President Eisenhower.[1] The interdependent purposes of the program are to give scope to younger civil service employees possessing extraordinary ability and initiative, and to enhance the ability of the policy-forming heads of state agencies to perform efficiently the tasks for which the public holds them accountable.

When a vacancy occurs in a civil service position "of a high administrative and policy influencing character" (Gov. Code, § 19220) the State Personnel Board may designate the position as a career executive assignment. The statutes normally "governing the selection, classification, salary, tenure and other conditions of employment" in the civil service do not apply to career executive assignments unless so provided by board rule. (Gov. Code, § 19221.) Eligibility for a career executive appointment is established by competitive examination which may be opened to a much larger field of candidates (limited to permanent civil service employees) than could compete in a conventional promotional examination. (Gov. Code, § 19222.) On October 15, 1963, the State Personnel Board filed rules for administration of the new program. (Cal. Admin. Code, tit. 2, §§ 548-548.145.) These rules provide that an employee gains no tenure in a career executive assignment; termination can be effected by 20 days written notice. (Cal. Admin. Code, tit. 2, § 548.135; also see Gov. Code, § 18547.)

On November 8, 1963, the personnel board by resolution designated as career executive assignments a large number of positions throughout state service. The position of chief bank examiner was so designated, but because of the "grandfather" provision in Government Code section 19220 no further action was possible until a vacancy occurred on April

---

[1]Commission on Organization of the Executive Branch of the Government, Personnel and Civil Service (Washington, D.C., 1955), excerpted with other documents constituting the background of the California statute in Musolf, Lloyd D., Career Executive Assignment in California, (Davis, 1963).

30, 1964, by reason of the retirement of the chief bank examiner other than respondent Tauffer. An eligible list was established by examination as provided in the board's rules, and the Superintendent of Banks appointed appellant from the list on September 14, 1964.

On September 16, 1964, respondent Hillebrandt voluntarily resigned his exempt position as chief deputy superintendent of banks, and requested reinstatement as chief bank examiner. The superintendent had doubts regarding the rights of Cryor, Hillebrandt, and Tauffer, and only demoted appellant to his former position of bank examiner IV, in order to reinstate Hillebrandt, when specifically advised to do so by the staff of the State Personnel Board. The superintendent recorded his intention not to exercise the power of removal without cause which he had over Cryor's career executive assignment.

Cryor appealed to the personnel board seeking rescission of his displacement. Upon denial of the appeal, he petitioned the superior court for a writ of mandate. The present appeal followed denial of the writ.

Appellant contends that Hillebrandt's right of reinstatement is governed by Government Code section 19141, subdivision (c), which provides: "An employee who has vacated a position to accept appointment to an exempt position shall be reinstated to his former position, if he so desires, at any time within six months after vacating such former position, and may, with the consent of the appointing power of the vacated position, be reinstated to such former position at any time." On this theory, Hillebrandt had no right of reinstatement without the consent of the superintendent because more than six months had elapsed since Hillebrandt vacated his former position as chief bank examiner. Respondents rely on the provisions of subdivision (g) : "An employee who has vacated a position to accept appointment to an exempt position or a limited term position in the same department, board, commission, or state agency, shall, if he so desires, at the termination of such appointment, or any extension thereof by operation of law or new appointment, be reinstated to his former position." They contend that since Hillebrandt left the position of chief bank examiner in order to accept an exempt position in the same agency, his right of return is not limited to six months. Appellant's rejoinder is that subdivision (g) cannot apply because Hillebrandt's voluntary resignation was not a "termination of such appointment. . . ." Appellant would

read subdivision (g) as if the word "involuntary" were inserted before the word "termination."

We first observe that to adopt the construction suggested by appellant would create a surprising anomaly: an employee whose exempt appointment is involuntarily terminated for inefficient performance would apparently be in a better position than one who voluntarily resigned. The former would have an absolute right to reinstatement under subdivision (g) while the latter would have an absolute right of reinstatement under subdivision (c) only within six months after vacating the tenured position. ■■ When statutory language is susceptible of two constructions, one of which would produce absurd consequences and the other a reasonable and fair result, the latter construction should be adopted. (*Estate of Jacobs* (1950) 100 Cal.App.2d 452, 458-459 [223 P.2d 898]; also see *Snyder* v. *City of Alameda* (1943) 58 Cal.App.2d 517, 520 [136 P.2d 857].)

Although we find no reported decision construing the word "termination" in the context of this statute, several decisions use the word as importing a completion or cessation occurring in any way whatever. In *Snyder* the court declared that the city's fire and police pension ordinance "deals with two distinct methods of termination of employment . . . ; the first is by removal, which of course means the discharge of the employee for cause, and this is accomplished by the act of the employer; the second is by way of resignation, voluntary or involuntary, which is brought about by the act of the employee." (P. 520.) Thus the court used "termination" to include either discharge or voluntary vacation of a position. Similarly, it has been held that a "resignation is in the nature of a notice of the termination of a contract of employment. . . ." (*Sherman* v. *Board of Trustees* (1935) 9 Cal.App.2d 262, 266 [49 P.2d 350]; see also *Flewelling* v. *Board of Trustees* (1960) 178 Cal.App.2d 168, 174 [2 Cal.Rptr. 891].)

■■ A court should not insert qualifying provisions into the language of a statute where such a construction is not plainly required in order to carry out legislative intent. (*Vallerga* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 313, 318 [1 Cal.Rptr. 494, 347 P.2d 909].) We find nothing in the language or context of Government Code section 19141, subdivision (g) to justify us in qualifying "termination" by the word "involuntary" as appellant suggests.

The construction suggested by appellant was advanced by

him before the personnel board. ▮▮▮ The board took the view, however, that the word "termination" as used in subdivision (g) was intended to include a voluntary resignation. ▮▮▮ While the board's construction is not controlling, a contemporaneous construction of a statute by an administrative agency may be given great weight. (*Walsh* v. *Department of Alcoholic Beverage Control* (1963) 59 Cal.2d 757, 762 [31 Cal.Rptr. 297, 382 P.2d 337]; *Koehn* v. *State Board of Equalization* (1958) 166 Cal.App.2d 109, 115 [333 P.2d 125].)

In its decision, the board pointed to what we believe is the intended relationship between subdivisions (c) and (g) of section 19141: "While Section 19141(c) places a general limitation on the right of an employee to return to a civil service position after an extended absence in an exempt position, Section 19141(g) makes a specific and logical exception to this general rule. The problems that might arise in connection with movement between agencies after a long absence have no application to the return of an exempt employee to a lower position within the same agency and, accordingly, the Legislature placed no time limit on this type of movement." (Also see 12 Ops.Cal.Atty.Gen., 143, 145.) Appellant attempts to refute this theory with the argument that the language in subdivision (g), "in the same department, board, commission, or state agency," applies only to limited term positions and not to exempt positions. But this construction would result in another anomaly: as to exempt positions, both the unlimited right to reinstatement under subdivision (g) and the limited right, under subdivision (c), would apply. Moreover, the legislative history tends strongly to support the personnel board's view. Section 19141, as enacted in 1945, merely provided that an employee who vacated a position to take up an exempt position could be reinstated upon termination of the exempt appointment. (Stats. 1945, ch. 123, § 1.) An amendment adopted at the same session inserted the six months provision. (Stats. 1945, ch. 463, § 2.) At the same time subdivision (f), which is now subdivision (g), was added, as follows: "A permanent employee who has vacated a position to accept appointment to an exempt position in the same department, board, commission, or State agency, shall, if he so desires, at the termination of such appointment, be reinstated to his former position." It was not until 1947 that the clause "or a limited term position" was added to the foregoing subdivision. (Stats. 1947, ch. 111, § 1.) Therefore, the qualifying clause could not have

been intended to apply only to limited term positions where there was no reference to such positions in the original text of the statute.

■■■ The interpretation of section 19141 adopted by the personnel board is consistent with the common usage of the word "termination." The board's decision also gives a reasonable and intelligible effect to each subdivision and harmonizes every part. (*Select Base Materials* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *People* v. *One 1962 Chevrolet Bel Air* (1967) 248 Cal.App.2d 725, 728 [56 Cal.Rptr. 878].) We conclude that the construction adopted by the board and the trial court was correct.

Appellant next contends that Hillebrandt's former civil service position was abolished when the position of chief bank examiner was designated a career executive assignment. A related contention is that, since Hillebrandt had not qualified for a career executive assignment by securing a place on the eligible list, he could not displace Cryor by taking up a position which had been transformed into a career executive assignment. Therefore, it is argued. if Hillebrandt had rights of return, he should have displaced respondent Tauffer, who still holds the position of chief bank examiner under civil service status. Both of these contentions are founded on the same misconception regarding the relationship between the career executive program and conventional civil service procedures. ■■■ Neither the statute providing for career executive assignments nor the board's action in putting the program in motion has created any "positions." Positions in the state service are established by the appointing power having jurisdiction in the particular agency. as authorized by law and subject to the budget. (Gov. Code, § 18805.) Civil service laws provide procedures for filling vacant positions and establish the tenure and other rights of the person lawfully appointed. Government Code, section 19220, et seq., merely provide a different method of selection, and different rights on the part of the person appointed. during such time as the position has been designated by the Personnel Board to be a career executive assignment.

The statute expressly provides that "Assignment by appointment to such a position [one under career executive assignment] does not confer any rights or status in the position other than provided in Article 8. . . ." (Gov. Code, § 18547; also see 2 Cal. Admin. Code, § 548.135.) The article referred to does not give the career executive any special

rights superior to those of a former incumbent exercising his statutory right of reinstatement. We conclude therefore that Hillebrandt's right of return was unimpaired. Since Cryor's appointment was junior to that of Tauffer, Cryor was the one to be displaced.

The judgment is affirmed.

Devine, P. J., and Rattigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 27, 1967.